

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00556-CR

DONALD DWIGHT BROWN                                 APPELLANT

V.

THE STATE OF TEXAS                                     STATE

------------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In one point, Appellant Donald Dwight Brown appeals the trial court's order denying his request for DNA testing. We affirm.

### II. Factual and Procedural Background

In 2003, Brown pleaded guilty to one count of aggravated sexual assault of a child and true to the enhancement paragraph alleging one prior felony

---

[1]*See* Tex. R. App. P. 47.4.

conviction. The trial court accepted these pleas and assessed Brown's punishment at sixty-five years' confinement.

In 2004, Brown requested DNA testing and appointment of counsel, and the trial court duly appointed counsel. In 2008, on the State's motion, the trial court ordered the forensics division of the Fort Worth Police Department to provide an affidavit to the State, addressing the existence of evidence that may contain biological evidence in Brown's case. In 2010, Brown filed his request for DNA testing, and the trial court ordered the State to deliver a list of any DNA-testable evidence.

The State replied that evidence that might contain biological material included the sexual assault kit, cuttings of a towel, and cuttings from the complainant's underwear, but it argued that DNA testing was not required because these items had already been subjected to DNA testing—results of which pointed to Brown—and that there was no reasonable likelihood that new testing techniques would provide more accurate and probative results. The State attached the following to its reply: (1) an affidavit from the records custodian of the forensics division of the Fort Worth Police Department, stating that evidence or property existed that might contain biological evidence and attaching a list of said evidence: vulvar swabs from the complainant, cuttings from the complainant's underwear, buccal swabs from the complainant, a cutting from a towel, buccal swabs from Brown, a slide made from the underwear, hairs collected from the towel, and rectal swabs and a rectal smear from the

2

complainant; (2) an affidavit from the property custodian of the Fort Worth Police Department property room, stating that the items in the possession of the property room were: "sexual assault kit, pair panties, white bath towel, buccal swab kit, pair blue overall shorts"; and (3) the May 3, 2002 serology lab report recording the DNA test results from the sexual assault kit, underwear, towel, and buccal swab kit. The serology lab report stated the following:

> 1. Semen was detected on the vulvar specimens. The presumptive test for semen was positive on the rectal specimen. However, the presence of semen could not be confirmed. Semen was not detected on the vestibular, vaginal, inner-labia and perianal specimens. The presumptive test for blood was positive on the rectal specimen. Samples have been retained and frozen should further testing be necessary.

> 2. Semen was detected on the panties. Samples have been retained and frozen should further testing be necessary.

> 3. The presumptive test for semen was positive on the towel. The presumptive test for blood was negative on the towel. Samples have been retained and frozen should further testing be necessary.

> 4. The buccal swabs have been retained and frozen pending further testing.

The serology report set out the results for the methodology used[2] and stated the following conclusion:

---

[2]The report set out the following statistical comparison:

The frequency of occurrence of this thirteen system genetic profile in three North American populations is as follows:

Black           1 in 41.5 quadrillion
Caucasian   1 in 10.3 quintillion
Hispanic      1 in 23.3 quintillion.

3

Based on these results, Donald Brown (001) is identified as the donor of the DNA profile obtained from the sperm fraction of the cutting from the towel (002), the predominant profile from the epithelial fraction from the cutting of the towel (002), and the sperm fraction of the vulvar swab (006). The DNA profile obtained from both the epithelial fractions of the vulvar swab (006) and the cutting from the panties (003) is consistent with [the complainant] (007). The sperm fraction of the cutting from the panties (003) is a mixture. Both D. Brown and [complainant] (007) can be included as contributors to this mixture.

The State filed proposed findings of fact and conclusions of law, followed by amended proposed findings of fact and conclusions of law. The trial court adopted the State's amended proposed findings and conclusions and denied Brown's request for DNA testing. The following fact findings are pertinent to the arguments below:

1. Defendant[] pled guilty to the offense of aggravated sexual assault of a child on June 18, 2003.

. . . .

5. Evidence exists that might contain biological material, including the sexual assault kit, cuttings of a towel, and cuttings from the victim's panties.

6. The sexual assault kit, the towel, and the panties were already tested.

7. Semen was detected on the sexual assault kit, the towel, and the panties.

8. Defendant was identified as the contributor of the semen found on the towel, in the sexual assault kit, and on the victim's panties by Short Tandem Repeat ("STR") DNA testing done on March 13, 2003.

9. The statistical analysis of the STR DNA testing concluded that the frequency of occurrence of this genetic profile in three North American populations is as follows:

4

1 in 41.5 quadrillion [Black];
1 in 10.3 qu[int]illion [Caucasian]; and
1 in 23.3 qu[int]illion [Hispanic].

10.  The STR DNA testing done in this case provided extremely accurate and probative results.

11.  There is no reasonable likelihood that newer testing techniques would provide more accurate and probative results.  [Internal citations omitted.]

The pertinent conclusions of law are:

2.  Due to the accurate and probative nature of the STR DNA testing performed in this case in 2003, there is no reasonable likelihood that newer testing techniques would provide more accurate and probative results than the previous test.

3.  Defendant's motion fails to meet the statutory requirements of article 64.01 of the Texas Code of Criminal Procedure.

This appeal followed.

### III.  DNA Testing

To be entitled to post-conviction DNA testing, a convicted person must meet the requirements of articles 64.01 and 64.03 of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. arts. 64.01, 64.03 (West 2011); *Routier v. State*, 273 S.W.3d 241, 245–46 (Tex. Crim. App. 2008).  Under article 64.01, a convicted person seeking retesting of biological evidence must demonstrate in his motion for testing that newer techniques would provide "a reasonable likelihood of results that are more accurate and probative than the results of the previous test."  Tex. Code Crim. Proc. Ann. art. 64.01(b)(2); *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002).  To meet this burden, the convicted

5

person must provide statements of fact in support of his claims; general, conclusory statements are insufficient.[3] *Dinkins*, 84 S.W.3d at 642. Failure to satisfy any of the requirements of articles 64.01 and 64.03 defeats the motion. *See id.* at 642–43; *see also Rivera*, 89 S.W.3d at 59, 61. When, as here, the trial court denies a motion for post-conviction DNA testing without hearing, we review the ruling de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005)

In his sole point, Brown complains that trial court "may have considered" his guilty plea in denying his motion to test DNA evidence, that code of criminal procedure article 64.03(b) prohibits the trial court from finding identity was not at issue based solely on such guilty plea or admission, that DNA material is available for retesting, and that the additional testing is arguably needed to exclude him as the perpetrator.

The State responds that the trial court properly denied Brown's motion under article 64.01(b)(2) because there was no reasonable likelihood that newer testing techniques would provide more accurate and probative results than his previous DNA testing—that is, Brown had already been identified through the prior DNA test as the contributor of the semen present on the complainant's

---

[3]Further, under article 64.03, the convicted person must show that the evidence still exists in a condition making testing possible, identity was or is an issue, and a reasonable probability exists that he would not have been convicted if exculpatory DNA test results had been obtained. Tex. Code Crim. Proc. Ann. art. 64.03(a); *Rivera v. State*, 89 S.W.3d 55, 59 & n.13 (Tex. Crim. App. 2002).

underwear, found in the sexual assault kit, and found on a towel—and that the trial court's findings and conclusions make clear that Brown's guilty plea played no role in the denial of his motion. We agree with the State.

While the trial court acknowledged Brown's guilty plea in its fact findings, the findings also reflect that the 2003 DNA testing conclusively identified Brown as the offense's perpetrator. Brown presented no evidence to the trial court that the 2003 testing was inaccurate or flawed or that more advanced technology would defeat its conclusive determination of his identity as the perpetrator of the offense.[4] Because Brown failed to meet his burden to demonstrate that newer techniques would provide a reasonable likelihood of more accurate and probative results than the 2003 DNA testing, the trial court did not need to consider his guilty plea to deny the motion for DNA testing. *See Swearingen v. State*, 303 S.W.3d 728, 735 (Tex. Crim. App. 2010) (stating that additional testing would add no value when appellant showed no reasonable likelihood that results would be more accurate or probative and the DPS criminalist testified that she had been able to obtain a full DNA profile from the material that appellant wanted retested); *Luna v. State*, No. 02-03-00012-CR, 2003 WL 21940907, at *2 (Tex. App.—Fort Worth Aug. 14, 2003, pet. ref'd) (mem. op., not designated for publication)

---

[4]In his affidavit in support of his motion, Brown references his conviction before stating, "I believe biological material related to my offense is still in the possession of Tarrant County or police authorities," and "I do not believe the material was tested at the time of my conviction and believe testing of the biological material could establish my innocence."

(affirming trial court's denial of DNA testing motion because appellant failed to show a reasonable likelihood that new testing techniques would provide a more accurate result when there was a lack of any controverting evidence and the DNA samples' analyst concluded that the probability of selecting an unrelated individual matching appellant's profile was one in greater than 5.5 billion Caucasians or African-Americans, one in 5.2 billion Southeastern Hispanics, and one in one billion Southwestern Hispanics).  We overrule Brown's sole point.

## IV.  Conclusion

Having overruled Brown's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 25, 2011