02-10-556-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-10-00556-CR

 


 
 
 DONALD DWIGHT BROWN
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE
 STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.  Introduction

In one point, Appellant Donald Dwight
Brown appeals the trial court’s order denying his request for DNA testing.  We
affirm.  

II.  Factual and Procedural
Background

          In 2003, Brown pleaded
guilty to one count of aggravated sexual assault of a child and true to the
enhancement paragraph alleging one prior felony conviction.  The trial court
accepted these pleas and assessed Brown’s punishment at sixty-five years’
confinement.

          In 2004, Brown requested DNA
testing and appointment of counsel, and the trial court duly appointed counsel.
 In 2008, on the State’s motion, the trial court ordered the forensics division
of the Fort Worth Police Department to provide an affidavit to the State,
addressing the existence of evidence that may contain biological evidence in
Brown’s case.  In 2010, Brown filed his request for DNA testing, and the trial
court ordered the State to deliver a list of any DNA-testable evidence.

          The State replied that
evidence that might contain biological material included the sexual assault
kit, cuttings of a towel, and cuttings from the complainant’s underwear, but it
argued that DNA testing was not required because these items had already been
subjected to DNA testing—results of which pointed to Brown—and that there was
no reasonable likelihood that new testing techniques would provide more
accurate and probative results.  The State attached the following to its
reply:  (1) an affidavit from the records custodian of the forensics division
of the Fort Worth Police Department, stating that evidence or property existed
that might contain biological evidence and attaching a list of said evidence: 
vulvar swabs from the complainant, cuttings from the complainant’s underwear,
buccal swabs from the complainant, a cutting from a towel, buccal swabs from
Brown, a slide made from the underwear, hairs collected from the towel, and
rectal swabs and a rectal smear from the complainant; (2) an affidavit from the
property custodian of the Fort Worth Police Department property room, stating
that the items in the possession of the property room were:  “sexual assault
kit, pair panties, white bath towel, buccal swab kit, pair blue overall
shorts”; and (3) the May 3, 2002 serology lab report recording the DNA test
results from the sexual assault kit, underwear, towel, and buccal swab kit.  The
serology lab report stated the following:

1. 
 Semen was detected on the vulvar
specimens.  The presumptive test for semen was positive on the rectal
specimen.  However, the presence of semen could not be confirmed.  Semen was
not detected on the vestibular, vaginal, inner-labia and perianal specimens. 
The presumptive test for blood was positive on the rectal specimen.  Samples
have been retained and frozen should further testing be necessary.

 

2. 
Semen was detected on the
panties.  Samples have been retained and frozen should further testing be
necessary.

 

3. 
The presumptive test for semen was
positive on the towel.  The presumptive test for blood was negative on the
towel.  Samples have been retained and frozen should further testing be
necessary.

 

4. 
The buccal swabs have been
retained and frozen pending further testing.

 

The serology report set out the
results for the methodology used[2]
and stated the following conclusion:

Based on these results, Donald Brown (001) is
identified as the donor of the DNA profile obtained from the sperm fraction of
the cutting from the towel (002), the predominant profile from the epithelial
fraction from the cutting of the towel (002), and the sperm fraction of the
vulvar swab (006).  The DNA profile obtained from both the epithelial fractions
of the vulvar swab (006) and the cutting from the panties (003) is consistent
with [the complainant] (007).  The sperm fraction of the cutting from the
panties (003) is a mixture.  Both D. Brown and [complainant] (007) can be
included as contributors to this mixture.

 

          The State filed proposed
findings of fact and conclusions of law, followed by amended proposed findings
of fact and conclusions of law.  The trial court adopted the State’s amended
proposed findings and conclusions and denied Brown’s request for DNA testing.  The
following fact findings are pertinent to the arguments below:

1.  Defendant[] pled guilty to the offense of
aggravated sexual assault of a child on June 18, 2003.

 

. . . .

 

5.  Evidence exists that might contain biological
material, including the sexual assault kit, cuttings of a towel, and cuttings
from the victim’s panties.

 

6.  The sexual assault kit, the towel, and the panties
were already tested.

 

7.  Semen was detected on the sexual assault kit, the
towel, and the panties.

 

8.  Defendant was identified as the contributor of the
semen found on the towel, in the sexual assault kit, and on the victim’s
panties by Short Tandem Repeat (“STR”) DNA testing done on March 13, 2003.

 

9.  The statistical analysis of the STR DNA testing
concluded that the frequency of occurrence of this genetic profile in three
North American populations is as follows:

 

1 in 41.5
quadrillion [Black];

1 in 10.3 qu[int]illion
[Caucasian]; and

1 in 23.3 qu[int]illion
[Hispanic].

 

10.  The STR DNA testing done in this case provided
extremely accurate and probative results.

 

11.  There is no reasonable likelihood that newer
testing techniques would provide more accurate and probative results.  [Internal
citations omitted.]

 

The pertinent conclusions of law are:

2.  Due to the accurate and probative nature of the
STR DNA testing performed in this case in 2003, there is no reasonable
likelihood that newer testing techniques would provide more accurate and
probative results than the previous test.

 

3.  Defendant’s motion fails to meet the statutory
requirements of article 64.01 of the Texas Code of Criminal Procedure.

 

This appeal followed.

III.  DNA Testing

          To be entitled to
post-conviction DNA testing, a convicted person must meet the requirements of
articles 64.01 and 64.03 of the code of criminal procedure.  Tex. Code Crim.
Proc. Ann. arts. 64.01, 64.03 (West 2011); Routier v. State, 273 S.W.3d
241, 245–46 (Tex. Crim. App. 2008).  Under article 64.01, a convicted person
seeking retesting of biological evidence must demonstrate in his motion for
testing that newer techniques would provide “a reasonable likelihood of results
that are more accurate and probative than the results of the previous test.”  Tex.
Code Crim. Proc. Ann. art. 64.01(b)(2); Dinkins v. State, 84 S.W.3d 639,
642 (Tex. Crim. App. 2002).  To meet this burden, the convicted person must
provide statements of fact in support of his claims; general, conclusory
statements are insufficient.[3]
 Dinkins, 84 S.W.3d at 642.  Failure to satisfy any of the requirements
of articles 64.01 and 64.03 defeats the motion.  See id. at 642–43; see
also Rivera, 89 S.W.3d at 59, 61.  When, as here, the trial court
denies a motion for post-conviction DNA testing without hearing, we review the
ruling de novo.  See Smith v. State, 165 S.W.3d 361, 363 (Tex. Crim.
App. 2005)

          In his sole point, Brown
complains that trial court “may have considered” his guilty plea in denying his
motion to test DNA evidence, that code of criminal procedure article 64.03(b)
prohibits the trial court from finding identity was not at issue based solely
on such guilty plea or admission, that DNA material is available for retesting,
and that the additional testing is arguably needed to exclude him as the
perpetrator.

          The State responds that the
trial court properly denied Brown’s motion under article 64.01(b)(2) because
there was no reasonable likelihood that newer testing techniques would provide
more accurate and probative results than his previous DNA testing—that is,
Brown had already been identified through the prior DNA test as the contributor
of the semen present on the complainant’s underwear, found in the sexual
assault kit, and found on a towel—and that the trial court’s findings and
conclusions make clear that Brown’s guilty plea played no role in the denial of
his motion.  We agree with the State.

          While the trial court
acknowledged Brown’s guilty plea in its fact findings, the findings also
reflect that the 2003 DNA testing conclusively identified Brown as the offense’s
perpetrator.  Brown presented no evidence to the trial court that the 2003
testing was inaccurate or flawed or that more advanced technology would defeat
its conclusive determination of his identity as the perpetrator of the offense.[4] 
Because Brown failed to meet his burden to demonstrate that newer techniques
would provide a reasonable likelihood of more accurate and probative results
than the 2003 DNA testing, the trial court did not need to consider his guilty
plea to deny the motion for DNA testing.  See Swearingen v. State, 303
S.W.3d 728, 735 (Tex. Crim. App. 2010) (stating that additional testing would add
no value when appellant showed no reasonable likelihood that results would be
more accurate or probative and the DPS criminalist testified that she had been
able to obtain a full DNA profile from the material that appellant wanted
retested); Luna v. State, No. 02-03-00012-CR, 2003 WL 21940907, at *2
(Tex. App.—Fort Worth Aug. 14, 2003, pet. ref’d) (mem. op., not designated for
publication) (affirming trial court’s denial of DNA testing motion because
appellant failed to show a reasonable likelihood that new testing techniques
would provide a more accurate result when there was a lack of any controverting
evidence and the DNA samples’ analyst concluded that the probability of
selecting an unrelated individual matching appellant’s profile was one in
greater than 5.5 billion Caucasians or African-Americans, one in 5.2 billion
Southeastern Hispanics, and one in one billion Southwestern Hispanics).  We
overrule Brown’s sole point.

IV.  Conclusion

          Having overruled Brown’s sole point, we affirm the
trial court’s judgment.

 

 

                                                                             PER
CURIAM

 

PANEL:  MCCOY, MEIER, and GABRIEL,
JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 25, 2011









[1]See
Tex. R. App. P. 47.4.





[2]The
report set out the following statistical comparison:

The frequency of
occurrence of this thirteen system genetic profile in three North American
populations is as follows:

 

Black           1
in 41.5 quadrillion

Caucasian   1 in
10.3 quintillion

Hispanic      1 in
23.3 quintillion.





[3]Further,
under article 64.03, the convicted person must show that the evidence still
exists in a condition making testing possible, identity was or is an issue, and
a reasonable probability exists that he would not have been convicted if
exculpatory DNA test results had been obtained.  Tex. Code Crim. Proc. Ann.
art. 64.03(a); Rivera v. State, 89 S.W.3d 55, 59 & n.13 (Tex. Crim. App.
2002).





[4]In
his affidavit in support of his motion, Brown references his conviction before
stating, “I believe biological material related to my offense is still in the
possession of Tarrant County or police authorities,” and “I do not believe the
material was tested at the time of my conviction and believe testing of the
biological material could establish my innocence.”