Billy James SMITH, Appellant,

v.

The STATE of Texas.

No. PD–393–04.

Court of Criminal Appeals of Texas.

June 15, 2005.

Allan Fishburn, Dallas, for Appellant.

Lori Ordiway, Asst. District Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

MEYERS, J., delivered the opinion of the unanimous Court.

Appellant was convicted of aggravated rape in 1987 and the jury assessed a life

sentence. In 2001, he filed a pro se motion for forensic DNA testing under Texas Code of Criminal Procedure Chapter 64 and requested that counsel be appointed to represent him. Counsel was appointed and a formal motion for forensic DNA testing was filed, accompanied by an affidavit by Smith stating that he is actually innocent of the offense for which he was convicted. The trial court denied the motion,[1] stating that the motion failed to include an affidavit alleging specific facts in support of his motion and failed to establish by a preponderance of the evidence that exculpatory DNA tests would prove his innocence. Appellant's request that the trial court take judicial notice of the record was granted. The court of appeals affirmed the trial court's denial of DNA testing. Appellant filed a pro se petition for discretionary review stating that his claim of actual innocence in his motion and affidavit was the equivalent of asserting that he would not have been tried or convicted if favorable DNA results were obtained. We hold that the trial court and court of appeals erred by failing to consider the facts in the judicially noticed trial record. We will reverse the court of appeals and remand the cause to the trial court to order DNA testing.

## FACTS

Smith filed the first Chapter 64 motion and affidavit pro se on October 10 and requested counsel under 64.01(c). The statute requires that the sworn affidavit contain a statement of facts in support of the motion, but it does not specify what facts must be included. *See* Code of Criminal Procedure Art. 64.01(a). Smith included the facts that: he was convicted of aggravated sexual assault; biological material secured by law enforcement officials existed which could be subjected to DNA testing; and the material was in the possession of the State at the time of the trial, but was not previously subjected to DNA testing because DNA testing was not available. As such, Smith's pro se motion and affidavit met the requirements of 64.01. The counsel appointed to represent Smith filed a formal motion for forensic DNA testing, asking the court to determine whether the evidence is in a condition that makes DNA testing possible, and whether the evidence has been subjected to a proper chain of custody. The motion additionally asks the court to find that identity is an issue in the case and that Smith has proven by a preponderance of the evidence that a reasonable probability exists that he would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing. The motion was accompanied by an affidavit in which Smith swears that he is not guilty of the offense for which he was convicted, and that the State has evidence that will establish that he is innocent of the alleged offense. The record from the hearing indicates that the trial judge heard motions from two unrelated cases at the same time. No evidence or testimony was presented by the appointed attorney, and the trial judge denied the motions for DNA testing presented by both Smith and another appellant. However, the court was not clear about which motions were being heard or which was being ruled upon (nor was the ruling clear, as mentioned in footnote 1).

1. The trial court stated that it was denying the motion, but the written order signed by the trial court indicated that the motion was dismissed with prejudice. After the court of appeals granted the State's motion to abate the appeal and ordered the trial court to conduct a hearing regarding whether the written order accurately reflected the trial court's ruling, the trial court rescinded the previous order and entered a new order denying Appellant's motion.

The judge did take judicial notice of the trial record in Smith's case.

## COURT OF APPEALS

The court of appeals determined that the only part of Chapter 64 that is disputed in this case is the requirement in 64.03(a)(2)(A), that Smith establish by a preponderance of the evidence that he would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing. *Smith v. State*, No. 05–02–01411–CR, 2004 WL 213661, 2004 Tex.App. LEXIS 1098 (Tex.App.-Dallas February 5, 2004)(not designated for publication). Because these arguments and allegations were not made in the trial court, and Appellant argued only that he was innocent, the court of appeals agreed with the trial court's finding that there were not sufficient facts in support of the motion. The court of appeals stated:

> On appeal, Smith argues that, if the samples taken from S.B. and contained in a rape kit were tested and Smith were eliminated as the source of the sperm, Smith's guilt would be eliminated. According to Smith, there was testimony at the trial that the seminal fluid taken from S.B. indicated she had sexual intercourse within the twenty-four hours preceding the offense, but nothing in the record indicated that S.B. had intercourse with anyone other than her attacker during the twenty-four-hour period. Smith reasons that the source of the seminal fluid must be the man who raped S.B. However, these arguments and factual allegations were not made in the trial court. In his motion and affidavit, Smith argued only that he was innocent.

*Id.* 2004 WL at *2, at *4–5. Appellant filed a pro se petition for discretionary review. We granted review to determine whether a reasonable probability exists that DNA tests would prove Appellant's innocence.

## STANDARD OF REVIEW

█ While we defer to the trial court's determination of issues of historical fact and application of law to fact issues that turn on the credibility and demeanor of the witnesses, there were no such issues in this case since there were no witnesses at the hearing and the trial record and affidavit of the Appellant are the only sources of information supporting the motion. As a result, the trial court is in no better position and we will review the issues *de novo*.

## CASELAW

The court of appeals cites several cases holding that if no factual evidence as to the Chapter 64 requirements is offered, trial courts do not err by denying a Chapter 64 motion. However, each of these cases can be distinguished. In *Dinkins v. State*, 84 S.W.3d 639 (Tex.Crim.App.2002), we upheld the trial court's denial of DNA testing because the facts he failed to provide in support of his motion included: what evidence he wanted tested, and that means of testing were not available at time of trial. As a result, his motion failed to meet the requirements of Article 64.01. Dinkins additionally said that he wanted testing first, and then, if the results were favorable, he would show that he would not have been prosecuted or convicted if the testing had been done prior to trial. However, Chapter 64 requires that this be shown before the court will order testing.

In *Kutzner v. State*, we considered the legislative intent of Article 64.03(a)(2)(a) and determined that the statute requires convicted persons to "show a reasonable probability exists that exculpatory DNA tests would prove their innocence." 75 S.W.3d 427, 439 (Tex.Crim.App.2002). In response to this opinion, the Legislature

amended and clarified Article 64.03. The bill analysis states:

 a. The bill clarifies that the standard of proof with regard to getting a DNA test is 'preponderance of the evidence.' By taking out the 'reasonable probability' language, the intent is to clarify that the defendant does not have to meet two burdens. Despite the reasoning in Kutzner, the Legislature did not intend for the defendant to have to prove 'actual innocence' (a principle under habeas law) in order to meet his burden to have the test done. The defendant must prove that, had the results of the DNA test been available at trial, there is a 51% chance that the defendant would not have been convicted.

 b. The bill further clarifies that the defendant does not have to meet a two-prong test of not having been prosecuted or convicted. Rather, the intent was that the person would have to prove by a preponderance of the evidence that he would not have been convicted. Accordingly, the bill strikes the 'prosecuted or' language.

House Criminal Jurisprudence Committee, Bill Analysis, Tex. H.B. 1011 78th Leg., R.S. (2003).

In *Whitaker v. State*, 160 S.W.3d 5 (Tex. Crim.App.2004), we held that Chapter 64 does not require the trial court to conduct a hearing, and there is no presumption in favor of the applicant when the State fails to file a response to the motion. We additionally concluded that regardless of the results, DNA testing would not show that Whitaker would not have been prosecuted or convicted. Testing blood from the gun used as the murder weapon and finding that it does not belong to the appellant in a murder case involving three conspirators would not be exculpatory since the blood could have belonged to the victim or one of the co-conspirators, or could have been left

on the rifle prior to the date of the offense. This is not the situation in the case before us. The seminal fluid was left during the 24 hours prior to the exam (which was conducted about eight hours after the attack); the seminal fluid obviously did not belong to the victim; and there was no evidence that the victim had intercourse with anyone else who could have left the seminal fluid other than the attacker. Therefore, in this case, if the Appellant's DNA does not match the DNA in the seminal fluid obtained from the rape examination, those results would be exculpatory.

## ANALYSIS

 At trial, the State used the presence of seminal fluid to indicate that a rape had indeed occurred. The State now argues that because the victim lived with her boyfriend, it is possible that she had intercourse with him in the 24 hours preceding the attack and that it was his seminal fluid that was found during the exam and not the attacker's. As such, the State argues that a test indicating that Smith's DNA does not match the seminal fluid would not be exculpatory because perhaps no seminal fluid was left at the time of the attack. However, we must consider the testimony in the judicially noticed trial record. Trial testimony by the victim indicates that seminal fluid was left by the attacker. This rebuts the State's argument that even if the DNA does not match Smith, he could still be guilty because the attacker may not have left behind any seminal fluid. Additionally, although the issue was discussed at trial, there is no testimony in the record indicating that the victim had intercourse with anyone other than her attacker within 24 hours of the rape exam. The evidence that the attacker did leave seminal fluid at the time of the attack, combined with the lack of any evidence that the victim had intercourse with anyone other than her

attacker during the 24 hours preceding the exam indicates that the seminal fluid belongs to the attacker. Thus, results indicating that Smith's DNA does not match the seminal fluid would be exculpatory.

The trial court and court of appeals examined this motion by too strict a standard in saying that the arguments and allegations made in the trial court were insufficient. Because Appellant argued only that he was innocent, the trial court and the court of appeals held that there were not sufficient facts supporting the motion. However, innocence is a contested fact that was raised by the Appellant in support of his motion for DNA testing. And, the court of appeals failed to consider the fact that the trial judge took judicial notice of the trial record which did contain facts supporting the motion.

■ Appellant arguably should have included in his affidavit the additional statements that: at trial, his sister provided him with an alibi; the identification was questionable since it was the victim's boyfriend—who had not witnessed the attack—who identified Appellant; police searched Appellant's laundry and belongings and did not find the clothing described by the victim; the clothes police did seize from Appellant did not contain any DNA evidence; and the victim did not testify that she had intercourse with anyone other than her attacker in the 24 hours prior to the exam, to support his assertion that he would not have been convicted if test results show that Appellant's DNA does not match the seminal fluid left by the attacker. However, the plea of actual innocence in this pro se motion is equivalent to an assertion that there is at least a 51% chance that he would not have been convicted. The trial record, which the trial court took judicial notice of, contained these facts. Therefore, the trial court had enough evidence in front of it to determine, by a preponderance of the evidence, that Appellant would not have been convicted if the DNA results were favorable. As such, this motion meets the requirements of Chapter 64 and Appellant is entitled to DNA testing.

## CONCLUSION

Because the trial court took judicial notice of the trial record when he ruled on the motion, and the facts were included in the record, the trial court had enough evidence to determine by a preponderance of the evidence that favorable DNA results would have prevented Smith's conviction. The cause is remanded to the trial court to order DNA testing under Article 64.03(c).