Opinion filed February 8, 2007















 
 
  
 
 







 
 
  
 
 




Opinion filed February 8, 2007

 

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00379-CR 

                                                    __________

 

                                       ALBERT MCAFEE, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                        On
Appeal from the 142nd District Court

 

                                                        Midland County, Texas

 

                                                Trial
Court Cause No. CR-14,493

 



 

                                                                   O
P I N I O N

Albert McAfee appeals the trial court=s order denying his postconviction
motion for forensic DNA testing.  We
affirm.








In 1988, the jury convicted appellant of
aggravated sexual assault.  The trial
court assessed punishment at fifty years confinement.  On June 9, 2005, appellant filed a motion requesting
forensic DNA testing under Tex. Code
Crim. Proc. Ann. arts. 64.01-.05 (Vernon 2006).  On August 29, 2005, appellant filed an
amended motion.  After a hearing, the
trial court entered its order denying appellant=s
motion.

In a sole appellate issue, appellant argues that
the trial court erred in denying his motion. 
A trial court may order forensic DNA testing only if, among other
things, identity was or is an issue in the case.  Article 64.03(a)(1)(B).  Article 64.03(a)(1)(B) requires Athat identity >was
or is= an
issue, not that future DNA testing could raise the issue.@ 
Bell v. State, 90 S.W.3d
301, 308 (Tex.
Crim. App. 2002).  Appellant has the
burden to show that identity was or is an issue in the case.  Wilson
v. State, 185 S.W.3d 481, 484 (Tex.
Crim. App. 2006).         

Appellant contended in his motion that A[i]dentity was and is an issue in this
case.@  In the motion, appellant neither explained
how identity was or is an issue in this case nor set forth any factual support
for his contention that identity was or is an issue in this case.  Appellant filed an affidavit in support of
his motion.  In the affidavit, appellant
stated the following contentions on the identity issue:

Identity was and continues to be an issue in this
case.  Specifically, the State did not
conduct DNA testing on the vaginal swabs or on any evidence but the bed
sheets.  Secondly, the complainant
testified that her assailant wore a mask. 
I did not commit this crime and I continue to maintain my innocence.

 

The parties did not present any witnesses at the
hearing on appellant=s
motion.  Apparently, the reporter=s record from the underlying aggravated
sexual assault trial was not before the trial court at the hearing on appellant=s motion.  However, appellant=s
counsel requested that the trial court take judicial notice of Athe file and our motion and [appellant=s] affidavit.@  Although the record is not entirely clear on
the judicial notice issue, the trial court apparently took judicial notice of
the requested items.  The State has filed
the reporter=s record
containing the testimony from the underlying aggravated sexual assault trial as
part of the appellate record.  At the
hearing on appellant=s
motion, the State presented the trial court a copy of the State=s brief in appellant=s appeal from his conviction in the
underlying aggravated sexual assault trial. 
However, a copy of the State=s
brief is not in the record on appeal.








At the hearing on appellant=s
motion, the State contended that identity was not an issue in the underlying
aggravated sexual assault case.  The
record from the hearing demonstrates that the trial court agreed with the State=s contention.  Therefore, the trial court entered its order
denying appellant=s
motion.  Article 64.03 does not require
that a trial court enter written findings, and the trial court did not enter
written findings in this case.

            In reviewing the trial court=s
ruling on a motion for DNA testing, the appellate court applies the bifurcated Guzman[1]
standard of review.  Rivera v. State,
89 S.W.3d 55, 59 (Tex.
Crim. App. 2002).  We afford almost total
deference to the trial court=s
determination of issues of historical fact and application-of-law-to-fact
issues that turn on credibility and demeanor, while we review de novo other
application-of-law-to-fact issues.  Id.

Appellant did not assert any facts supporting his
contention that identity was and is an issue in this case, either in his motion
for DNA testing or in his affidavit.  In
his motion, he merely stated the conclusion that A[i]dentity
was and is an issue in this case.@  In his affidavit, he stated that the victim
testified that her assailant wore a mask. 
Appellant also maintained his innocence in the affidavit.  However, appellant=s
affidavit failed to show or explain how identity was an issue.  In the absence of factual allegations that,
if true, would support the finding required by Article 64.03(a)(1)(B) B that Aidentity
was or is an issue in the case@
B we cannot say that the trial court
erred in denying appellant=s
motion.  See Russell v. State,
170 S.W.3d 732, 734 (Tex. App.CWaco 2005, no pet.); In re McBride,
82 S.W.3d 395, 397 (Tex.
App.CAustin
2002, no pet.).

            Additionally, assuming that the trial court took judicial
notice of the record from the underlying aggravated sexual assault trial, the
evidence presented at the trial supports the conclusion that identity was not
and is not an issue in this case.  The
victim testified that, on December 15, 1987, at about 9:00 or 10:00 p.m., a
black man pushed his way into her house through the front door and grabbed her
by the arm.  The victim testified that
the man had a white rag covering his face from the nose down.  The man told the victim to undress and
threatened her with a knife.  The victim
said that the man sexually assaulted her on the couch in her living room and
also sexually assaulted her on the bed in her bedroom.  After the man sexually assaulted the victim
in the bedroom, the victim and the man went back into the living room to get
dressed.  The victim testified that the
man sat down on the couch and fell asleep. 
The victim asked the man to leave, but the man would not wake up.     








The victim decided to leave her house to get help
from her neighbors.  She first went to
her next door neighbors=
house, but she was unable to awaken them. 
She then went across the street to Donald Ray Clater=s house.  The victim told Clater that a man had
sexually assaulted her and that the man was still in her house.  Donald McCoy was also present at Clater=s house.  The victim testified that, from the time she
left her house until the time she summoned Clater, she did not see or hear
anyone leave her residence.  Clater went
to another residence to call the police, and McCoy watched the front door of the
victim=s house
to see whether anyone entered or exited the house.  After Clater called the police, he also
watched the victim=s
house.  Clater testified that he and
McCoy traded watching the front door and back door of the house.  Clater testified that the first police
officer arrived at the scene about four minutes after the victim had first
arrived at his house. Clater and McCoy did not see or hear anyone leave the
victim=s house
from the time they started watching it until the officers arrived.  Clater told the officers that the man was
still in the victim=s house.

            Midland
Police Officer Recardo Candelaria was the first officer on the scene.  Officer Candelaria directed McCoy to watch
the back door of the house.  Officer
Candelaria and Clater watched the front door of the house.  Within a short period of time, backup
officers arrived at the victim=s
house.  Midland Police Officer Arthur
Villareal watched the back door of the house. 
Officer Villareal said that he checked the back door and that it was
locked.  Officer Candelaria and Officer
Villareal testified that they did not see anyone enter or exit the house while
they were watching it.

Midland K-9 Police Officer Teddy Patrick Bostick
and his police dog went to the front door of the house.  Officer Bostick testified that he opened the
screen door and stood in the doorway. Officer Bostick testified that he saw a
subject sitting and sleeping on the couch. 
Officer Candelaria then entered the house and found a black man asleep
on the couch.  Officer Candelaria leaned
over the man to wake him up.  Officer
Candelaria testified that he had to shake the man several times before he
finally woke up.  During their testimony,
Officer Candelaria and Officer Bostick identified appellant as being the man
they found asleep on the couch.  Officer
Villareal testified that, when he entered the house, Officer Candelaria and
Officer Bostick were talking with appellant.








Officer Candelaria testified that he placed
handcuffs on appellant.  Officer
Candelaria noticed that appellant had blood stains on his palms and on his
chest.  The evidence established that the
victim was bleeding and bruised after the sexual assaults.  Officer Candelaria said that appellant was
wearing blue jeans and some type of boots and that appellant was not wearing a
shirt.  Officer Candelaria found a pocket
knife in appellant=s right
front pants=
pocket.  Clater and McCoy testified that
they saw appellant exit the victim=s
house with the officers.

Officer Villareal testified that he took appellant
to the police department.  Officer
Villareal said that appellant was wearing blue jeans, socks, and rubber
boots.  He also said that appellant was
in possession of a T-shirt and a bandanna.

The victim testified that the back door to her
house was locked on the night in question. 
She also testified that she had blocked the back door by keeping a chest
of drawers in front of it.  The victim
said that she returned to her house after the officers removed the man from the
house.  She also said that, when she
returned to the house, the back door was locked and the chest of drawers was
still in front of the back door.

The victim testified that her attacker covered his
face from the nose down with a white rag, and the victim did not directly
identify appellant as her attacker during her testimony.  However, the above evidence establishes that
identity was not an issue in the case. 
The victim said that her attacker fell asleep on her couch after
sexually assaulting her.  Within a short
period of time after the attack, the officers found appellant sleeping on the
same couch in the victim=s
house.  The victim said that she did not
see or hear anyone leave her house from the time she left her house until she
spoke with Clater.  McCoy, Clater, and
the officers did not see or hear anyone enter or exit the victim=s house when they were watching the
house.  The victim was bruised and
bleeding after the attack.  Appellant had
blood on his palms and on his chest.  The
victim said that her attacker threatened her with a knife.  Appellant was in possession of a pocket
knife.  The evidence established that
only one person committed the offense. 
There was no evidence that someone other than appellant entered the
victim=s house
or committed the charged offense. 
Because identity was not an issue and is not an issue in the case, the
trial court did not err in denying appellant=s
motion.  See Article
64.03(a)(1)(B).








Appellant relies on Smith v. State, 165
S.W.3d 361 (Tex. Crim. App. 2005). 
Article 64.03(a)(2)(A) provides that the trial court may order forensic
testing only if Athe
convicted person establishes by a preponderance of the evidence that the person
would not have been convicted if exculpatory results had been obtained through
DNA testing.@  Smith involved the issue of whether
the defendant had met his burden under Article 64.03(a)(2)(A).  In Smith, the trial court took
judicial notice of the trial record from the underlying trial.  Smith, 165 S.W.3d at 362.  The Court of Criminal Appeals concluded that
the evidence in the trial record was sufficient to satisfy the defendant=s burden under Article
64.03(a)(2)(A).  Id. at 365.  Smith is factually distinguishable
from this case.  In this case, as set
forth above, the trial record from the underlying trial shows that identity was
not and is not an issue in the case.  We
overrule appellant=s
issue.  

We affirm the order of the trial court.

 

 

TERRY McCALL

JUSTICE

 

February
8, 2007

Do not
publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange,
J.











[1]Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).