Opinion issued December 4, 2008

 







In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00032-CR






ABRAHAM CAMPOS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 149th District Court

Brazoria County, Texas

Trial Court Cause No. 26947-2






MEMORANDUM OPINION


 A jury convicted appellant, Abraham Campos, of murder in 1992. He had
pleaded not guilty to the offense of murder and true to the enhancement allegations
of a prior conviction for felony injury of a child. The court found the enhancement
alleged true and sentenced appellant to forty years in prison. The Fourteenth Court
of Appeals affirmed his conviction. Campos v. State, 946 S.W.2d 414 (Tex.
App.--Houston [14th Dist.] 1997, no pet.). In September 2007, appellant filed two
motions for postconviction DNA testing and for appointment of counsel. Appellant
did not prevail and brings this appeal, contending that the trial court erred by denying
both motions. We affirm.

Background Facts (1)


 In late August 1992, Martin Rodriguez was stabbed to death outside the house
he shared with appellant's mother and Rodriguez's uncle, Emilio Miranda. Over the
course of several late night hours before the stabbing, appellant, Rodriguez, and
Miranda spent time drinking beer together outside that house. All had consumed
many beers. (2) At some point, Miranda left the group and went inside the house. 

 Miranda testified at trial that he heard Rodriguez screaming and that he looked
out a kitchen window to see appellant grabbing Rodriguez while holding a knife. (3) 
When he ran outside, Miranda saw blood on Rodriguez's body and saw appellant
running away from the house. 

 At trial, appellant's mother denied any knowledge of anything that happened
before or after the stabbing at her house, including whether appellant was present. 
She contradicted some of Miranda's statements and denied seeing Rodriguez's body
on the ground, did not know whether he was alive or dead, and just ran to the
neighbor's house to ask for help. Appellant's mother also denied speaking to anyone
about the stabbing except police detectives. Yet, three other witnesses testified at
trial that appellant's mother told them that her son had killed Rodriguez. (4) 

 Deputy C. Frame testified that he collected items from the scene of the
stabbing. Frame found a knife or knife-like instrument inside the house in the kitchen
sink. The instrument was "very wet and saturated with water." No identifiable prints
were detected on this knife-like instrument. Moreover, no evidence at the trial
established that the instrument was used to murder Rodriguez. Deputy Frame was
able to lift fingerprints from a beer can he collected at the scene and testified at trial
that the prints matched appellant's fingerprints. 

 Officer T. Earl of the Alvin Police Department encountered appellant at 2:16
a.m. on the night of the offense. Appellant was six-tenths to seven-tenths of a mile
away from his mother's house. He was at a pay phone and appeared to be "very
intoxicated." When Officer Earl approached him, appellant identified himself as
"Juan Carlos." Officer Earl arrested appellant for public intoxication and transported
him to the Alvin Police Department. At the police station, appellant denied having
a local address or any relatives in the area and claimed that he lived in Mexico City,
Mexico. He was not bleeding and had no scratch marks on him or blood splotches
on his clothing. 

 Standard of Review


 Article 64.03 of the Code of Criminal Procedure governs postconviction DNA
testing. TEX. CODE CRIM. PROC. ANN. art. 64.03 (Vernon Supp. 2008). We review
article 64.03 determinations de novo because appellate review does not depend on
determinations of demeanor or credibility, but on applying law to fact to ascertain
whether a defendant has shown, by a preponderance of the evidence, "that, had the
results of the DNA test been available at trial, there is a 51% chance that the
defendant would not have been convicted." Frank v. State, 190 S.W.3d 136, 138
(Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) (quoting Smith v. State, 165 S.W.3d
361, 364 (Tex. Crim. App. 2005)).


Discussion


 Appellant's two points of error challenge the trial court's refusal to order
postconviction DNA testing of two items, the knife-like instrument found in the
kitchen sink and the clothing appellant was wearing when he was arrested. Appellant
contends that the trial court's errors arise from not following Article 64.03 of the
Code of Criminal Procedure.

A. Principles Governing Postconviction DNA Testing

 To obtain forensic DNA testing, an applicant must establish by a
preponderance of the evidence that a reasonable probability exists that he would not
have been prosecuted or convicted if exculpatory results had been obtained through
DNA testing. Thompson v. State, 95 S.W.3d 469, 472 (Tex. App.--Houston [1st
Dist.] 2002, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art 64.03(a)(2)(A)).
The Court of Criminal Appeals has interpreted the statute as requiring the applicant
to show that "a reasonable probability exists that exculpatory DNA tests will prove
[his] innocence." Id. (quoting Kutzner v. State, 75 S.W.3d 427, 438 (Tex. Crim. App.
2002)).

 In Thompson, a defendant found guilty of aggravated assault with a deadly
weapon challenged an order denying his motion for postconviction DNA testing. 95
S.W.3d at 470. The defendant argued that he had "established by a preponderance
of the evidence that he would not have been prosecuted or convicted if exculpatory
results had been obtained through DNA testing . . . ." Id. In reviewing the trial
court's rulings, this Court held that it could not conclude that exculpatory DNA tests
on the weapon would prove the defendant's innocence because additional evidence
indicated that he was guilty. Id. at 470, 472. Specifically, Thompson was arrested
in close proximity to the crime just after the attack and was identified by the victim.
Id. Thus, "even if DNA testing proved that the [weapon] did not contain the
[victim's] blood or any blood at all, it would not prove [the man's] innocence. Id. at
472. Further, "[e]ven if negative test results were to supply an exculpatory inference,
[they] would not conclusively outweigh the other evidence of [the man's] guilt." Id. 

B. The Knife or Knife-Like Instrument

 Appellant's first point of error challenges the trial court's failure to order DNA
testing of the knife or knife-like instrument recovered from the sink inside appellant's
mother's house. In this case, as in Thompson, other evidence indicates that appellant
is guilty of Rodriguez's murder. Miranda testified that when he heard Rodriguez
scream, he looked out a kitchen window and saw appellant holding a knife to
Rodriguez. In addition, when he ran outside, Miranda saw appellant running away
from the house. Though appellant's mother contradicted Miranda, other evidence,
including the beer can with appellant's fingerprints, shows that he was present at the
house on the night of the stabbing. When Officer Frame arrested appellant, he was
less than a mile away from his mother's house, where the murder took place. Three
individuals testified that appellant's mother told them that her son had killed
Rodriguez. We may infer that the jury relied on these circumstances in finding
appellant guilty, and we note, in addition, that nothing in the record establishes that
the knife-life instrument was the murder weapon. 

 Though the knife or knife-like instrument was not subjected to DNA testing,
subjecting it to testing would not exonerate appellant, given the probative force of the
evidence tending to show that appellant was guilty and the lack of any link between
the instrument and Rodriguez's murder. Even if the results of DNA testing had been
available at his trial, it is not reasonably probable that appellant would have had a
51% chance of avoiding conviction. See Frank, 190 S.W.3d at 138. Accordingly, we
cannot say that the trial court abused its discretion by not following the standards of
Article 64.03(c).

 We overrule appellant's first point of error.

C. Appellant's Clothing on the Night of the Murder

 In his second point of error, appellant challenges the failure of the trial court
to order DNA testing of the clothing appellant was wearing when he was arrested. 
Appellant requested this testing in his second motion for DNA testing, but the record
does not include a ruling on this motion by the trial court. Accordingly, appellant's
second point of error presents nothing for review. See Tex. R. App. P. 33.1(a)
(governing preservation of error).

 We overrule appellant's second point of error.

 Conclusion We affirm the orders of the trial court.


 Sherry Radack

 Chief Justice

 

Panel consists of Chief Justice Radack and Justices Nuchia and Higley.


Do not publish. Tex. R. App. P. 47.2(b).
1. The facts are those derived from the court reporter's record of the original trial, which
the Brazoria County Clerk filed with this Court on October 2, 2008, pursuant to an
earlier order of this Court.
2. The Deputy Chief Medical Examiner for Harris County, Dr. Eduardo Bellas, testified
that the toxicology tests done as part of the autopsy indicated that Rodriguez had a
high level of alcohol concentration in his blood--"something in the area of three
times the legal limit." 
3. Miranda acknowledged that he initially told the police that someone else had stabbed
Rodriguez, but explained later that his motive for that story was to avenge his
nephew's death. Miranda later told police that he had actually observed appellant
grabbing Rodriguez while holding a knife. After being threatened by appellant's
father, Miranda told the grand jury that he did not remember anything from the night
of the stabbing. 
4. Rene Trevino, Cipiano Rodriguez, and Arrellio Rodriguez all testified that when they
visited appellant's mother's house to offer condolences to Miranda, appellant's
mother told them that her son had killed Rodriguez.