# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00549-CR

**Ronny Gene Smith, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 67764, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Ronny Gene Smith was convicted of the offense of sexual assault and was sentenced to sixty years' imprisonment. *See* Tex. Penal Code § 22.011(a) (setting out elements of offense), (f) (describing offense level); *see also id.* § 12.42(d) (elevating permissible punishment range for person convicted of felony who "has previously been finally convicted of two felony offenses" sequentially). The victim in that case, A.T., was vaginally penetrated by an assailant, and the assailant took her purse, which contained her cell phone. *See Smith v. State*, No. 03-11-00427-CR, 2013 WL 363685, at \*1 (Tex. App.—Austin Jan. 15, 2013, pet. ref'd) (mem. op., not designated for publication). After being taken to a local hospital, A.T. was examined by a sexual-assault-nurse examiner, and the nurse took swabs of A.T.'s vagina in an effort to collect DNA evidence. *Id.* The police later found Smith in possession of A.T.'s phone, and he agreed to provide "a DNA sample by means of a cheek swab." *Id.* DNA testing comparing Smith's voluntary sample with the sample taken from A.T. "matched

them with a 'reasonable degree of scientific certainty.'" *Id.* During the investigation, the "police also took a DNA sample from J.R.T., a person who suffered from schizophrenia and was known to frequent the area in which A.T. was attacked," but "[t]he sample was never tested because police eliminated J.R.T. as a possible suspect." *Id.* In the trial, Smith's attorney communicated to the district court that Smith wanted a continuance so that the sample from J.R.T. could be tested and so that the sample taken from Smith could be retested, but the district court denied the request. *Id.* at *2. On appeal, Smith urged, among other claims, that his trial attorney provided ineffective assistance of counsel by "failing to move for independent retesting of the DNA samples taken from [Smith] and J.R.T." *Id.* at *3. After considering his issues on appeal, this Court overruled them and affirmed the district court's judgment of conviction. *Id.* at *3-6.

Following this Court's ruling, Smith filed a pro se motion entitled "Motion Requesting Forensic Deoxyribonucleic Act ('DNA') Testing."[1] In the motion, Smith asserted that he never received the results of the forensic DNA testing that he voluntarily provided a sample for until the first day of trial, argued that he was not given the proper notice regarding important events related to his trial or regarding when his appointed counsel was changed, contended that the

[1] The clerk's record reveals that Smith filed a motion requesting DNA testing, an affidavit in support of that motion, and a motion for the appointment of counsel to aid him in pursuing the relief that he was requesting. In response, the State filed a motion asking the district court to deny Smith's motions. After considering the parties' arguments, the district court issued an order denying Smith's requests and containing various findings of fact. Following that ruling, Smith filed an amended motion requesting DNA testing and an affidavit, and the State similarly filed a motion asking the district court to deny Smith the relief that he was requesting. After considering the amended motion and the State's response, the district court issued another order denying Smith's motion and containing various findings of fact. The notice of appeal in this case indicates that Smith is appealing the second order by the district court. Accordingly, we will limit our discussion to the motions forming the basis for the second ruling, but we also note that those motions are similar to the ones that were filed prior to the first ruling.

appointment of his second trial attorney was "questionable," urged that his appointed counsel was not present during a crucial pretrial hearing, and asserted that his appointed counsel was deficient for various reasons. In addition, Smith argued in his motion that although A.T. identified him as her attacker at trial, she was not able to identify him in two photo lineups and instead identified J.R.T. in the first lineup. Further, Smith asserted that J.R.T.'s biological sample was never tested even though the police had it in their possession. In addition, Smith contended that the results of the trial would have been different if testing had been performed on J.R.T.'s sample and if Smith's sample had been retested because it would have destroyed A.T.'s credibility. Finally, Smith urged that various rulings by the district court harmed his ability to present a defense and that the State failed to comply with an "affirmative duty to provide all evidence 'available to the prosecution team' related to documents regarding 'chain of custody'" for the samples collected from him and J.R.T.

In his affidavit in support of his motion, Smith repeated many of his arguments from his motion, asserted that the State possesses "biological material" that was either not previously subjected to DNA testing or was tested but could now be tested "with newer testing techniques," and challenged the propriety of the manner in which his sample was labeled. Further, Smith asserted that his trial attorney should have challenged the chain of custody regarding the sample that he voluntarily gave to the police and should have filed "a motion for production of independent testing of" his sample as well as the one obtained from J.R.T.

In response, the State filed a motion urging the district court to deny the motion for DNA testing. *See* Tex. Code Crim. Proc. art. 64.02(a)(2). In its motion, the State asserted that the purpose of Smith's motion was to "challenge the effectiveness of his trial counsel, and the character of the evidence introduced at his trial." Further, the State urged that those types of claims may not

3

properly be pursued under the provisions of the Code of Criminal Procedure authorizing post-conviction DNA testing. Relatedly, the State asserted that Smith did not satisfy his burden of showing that he would not have been convicted if exculpatory results had been obtained through DNA testing, that identity was an issue in the case, and that the request for DNA testing was not made to delay execution of his sentence. *See id.* art. 64.03.

After reviewing the motions by the parties, the district court denied Smith's request for DNA testing and issued the following findings of fact[2]:

1. The defendant fails to establish by a preponderance of the evidence that he would not be convicted if further DNA testing proved exculpatory.

2. There is still no issue of the defendant's identity in this case.

3. There are no reasonable grounds for the defendant's Motion to be filed.

Smith appeals the district court's order denying his motion. *See id.* art. 64.05. We will affirm the district court's order denying Smith's request for DNA testing.

---

[2] In its original order denying Smith's first request for DNA testing, the district court issued the following relevant findings of fact:

5. The victim testified at the trial and identified the defendant as her attacker in court.

6. The known DNA profile extracted from [the] cheek swab that the defendant voluntarily gave to the police matched the DNA profile extracted from a vaginal swab taken from the victim with a reasonable degree of scientific certain[t]y.

7. The defendant does not establish that his identity was or is at issue in this case.

8. There is no showing that exculpatory test results would have prevented the defendant from being convicted of this crime.

4

**GOVERNING LAW AND STANDARD OF REVIEW**

Post-conviction DNA testing is governed by chapter 64 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. arts. 64.01-.05. Chapter 64 "is simply a procedural vehicle for *obtaining evidence*" to be used in a later habeas proceeding, *In re Garcia*, 363 S.W.3d 819, 822 (Tex. App.—Austin 2012, no pet.) (emphasis added), "authorizes *DNA testing* in cases in which the applicant meets the requirements enumerated," *id.* at 821-22 (emphasis added) (citing Tex. Code Crim. Proc. art. 64.03), and allows appellate courts to review a trial court's order denying DNA testing, Tex. Code Crim. Proc. art. 64.05. "However, chapter 64 is not an invitation to review every potential error in the underlying trial proceedings" and does not "confer jurisdiction on appellate courts to consider 'collateral attacks on the trial court's judgment or to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles.'" *In re Garcia*, 363 S.W.3d at 822 (quoting *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd)); *see also Board of Pardons & Paroles ex rel. Keene v. Court of Appeals for Eighth Dist.*, 910 S.W.2d 481, 483 (Tex. Crim. App. 1995) (explaining that court of criminal appeals has complete jurisdiction over post-conviction relief from final felony convictions under article 11.07 of Code of Criminal Procedure); *In re Briscoe*, 230 S.W.3d 196, 196-97 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) (stating that intermediate appellate courts have no jurisdiction over "post-conviction writs of habeas corpus in felony cases" under article 11.07).

A convicted person "may request forensic DNA testing only of evidence . . . that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense" but "was not previously subjected to DNA

testing" or was previously subjected to testing but can now "be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." Tex. Code Crim. Proc. art. 64.01(b). Article 64.03 of the Code of Criminal Procedure outlines the requirements that must be satisfied before DNA testing may be ordered. *Id.* art. 64.03. In particular, the court must find that the evidence "still exists and is in a condition making DNA testing possible" and "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect" and that "identity was or is an issue in the case." *See id.* art. 64.03(a)(1).[3] In addition, the "convicted person" must establish "by a preponderance of the evidence that" he "would not have been convicted if exculpatory results had been obtained through DNA testing" and that "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." *Id.* art. 64.03(a)(2).

When reviewing a trial court's decision regarding DNA testing, appellate courts "defer to the trial court's determination of historical facts, and its application of law to the facts if it turns on credibility and demeanor, and review de novo applications of law to the undisputed facts." *Caddie v. State*, 176 S.W.3d 286, 289 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). However, when, as here, the trial record and the convicted person's affidavit are the only sources of

---

[3] The current version of the statute also requires that the trial court find that "there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing," Tex. Code Crim. Proc. art. 64.03(a)(1)(B), but that requirement was not contained in the version of the statute in effect when Smith filed his request, *see* Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2, § 2, art. 64.03, 2001 Tex. Gen. Laws 2, 3 (amended 2003, 2007, 2015) (current version at Tex. Code Crim. Proc. art. 64.03(a)).

information supporting the motion, the trial court is in no better position than an appellate court in making the determination, and accordingly, appellate courts review the issues de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005) (explaining that because trial court did not hold live hearing on request for DNA testing, appellate court should conduct review de novo).

## DISCUSSION

On appeal, Smith presents two issues challenging the district court's order. In his first issue, Smith asserts that the district court erred by failing to grant his motion for post-conviction DNA testing; however, the entirety of his argument section for that issue alleges that his trial counsel provided him with ineffective assistance of counsel and lists particular actions by his trial attorney that Smith urges denied him due process. In his second issue on appeal, Smith argues that the district court erred by failing to allow him "to conduct pretrial discovery and inspection of certain documents, certain examination and test reports, and the content and bases of expert testimony upon which the government intended to rely, prior to trial, as a pro se Defendant." Further, he asserts in the argument portion of his second issue how those rulings by the district court were wrong and how they prejudiced his ability to present a proper defense. None of the arguments listed above pertain to the elements that must be satisfied before a trial court may order DNA testing or fall within the scope of chapter 64, and we do not have jurisdiction to consider those types of claims in a chapter 64 appeal because we may not address issues that exceed the scope of chapter 64. *See In re Garcia*, 363 S.W.3d at 822; *see also Nelson v. State*, No. 03-12-00187-CR, 2014 WL 902497, at *1 (Tex. App.—Austin March 5, 2014, no pet.) (mem. op., not designated for publication) (noting that appellant argued in request for DNA testing that his trial attorney provided ineffective assistance of

7

counsel, that trial judge was not impartial, and that State presented improper argument, determining that this Court did not have jurisdiction over those claims in chapter 64 proceeding, and explaining that "we may not consider any claims that fall outside the scope of chapter 64"). Moreover, we note that this Court overruled his previous appellate complaints alleging that he was denied effective assistance of counsel and that the district court erred by denying "two motions for continuance made by his attorneys." *See Smith*, 2013 WL 363685, at *1, *4, *6.

In the remaining portion of the argument section of his second issue on appeal, Smith asserts that the reports from the DNA testing performed for the trial in this case were problematic because they "did not disclose the chain of custody for the buccal swabs [of Smith and J.R.T.] provided to the . . . lab for DNA testing," did not provide an explanation for the delays in transferring the swabs to the lab, and did not explain why J.R.T.'s swab was not tested. Further, Smith contends that if the swabs had been independently tested, they would have shown "that there was a mistake with the chain of custody which could have led to [his] freedom." Although it is not entirely clear that Smith has presented a claim falling within the scope of chapter 64 by presenting what seem to be challenges to the admission of evidence in the underlying proceeding and although Smith does not set out how retesting his own DNA sample and testing J.R.T.'s sample could establish a chain-of-custody problem with the evidence or exculpate him, we note that Smith suggested in his motion seeking DNA testing, but not in his appellate brief, that identity was an issue in the case, and the district court specifically determined that identity was not an issue in the case. In the interests of justice, we will construe Smith's argument on appeal as a claim that identity "was or is an issue in the case." *See* Tex. Code Crim. Proc. art. 64.03(a)(1)(C).

8

"The identity requirement in Chapter 64 relates to the issue of identity as it pertains to the DNA evidence." *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008). Accordingly, an incarcerated person "can make identity an issue by showing DNA tests would prove his innocence" regardless of "the strength of identification evidence at trial." *Cloud v. State*, Nos. 05-13-01235-CR, -01237-CR, 2014 WL 1413818, at *2 (Tex. App.—Dallas Mar. 26, 2014, pet. ref'd) (mem. op., not designated for publication). "However, if DNA testing would not determine the identity of the person who committed the offense or would not exculpate the person convicted, then the requirements for DNA testing under Chapter 64 are not met." *Sims v. State*, No. 03-14-00201-CR, 2014 WL 7475235, at *3 (Tex. App.—Austin Dec. 17, 2014, no pet.) (mem. op., not designated for publication). If identity is not or was not an issue, a trial court cannot order DNA testing. *Reger*, 222 S.W.3d at 514.

Before addressing the issue, we note as a preliminary matter that there appears to be a procedural hurdle to Smith's request to retest the sample collected from him. Chapter 64 does allow for requests to retest evidence that was previously subjected to DNA testing but only in circumstances where the evidence "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." Tex. Code Crim. Proc. art. 64.01(b)(2). Although Smith acknowledges that his sample was tested and although he mentioned briefly in his affidavit accompanying his request for DNA testing that new techniques could be utilized, a convicted person must provide statements of fact supporting his claim that the evidence can be subjected to testing with newer techniques that will provide a reasonable likelihood of more accurate and probative results, and the convicted person may not simply rely on general and conclusory statements. *See Padilla v. State*, Nos. 03-12-00299-CR,

9

-00300-CR, -00301-CR, 2013 WL 3185896, at *5 (Tex. App.—Austin June 20, 2013, pet. ref'd) (mem. op., not designated for publication); *see also Medearis v. State*, No. 03-12-00698-CR, 2013 WL 4822944, at *3 (Tex. App.—Austin Aug. 30, 2013, no pet.) (mem. op., not designated for publication) (noting that fact that samples had already been tested presents "procedural problem" to request for testing because chapter 64 applies to evidence that has not been previously tested or that can be subjected to new testing techniques providing accurate and probative results and because motion seeking testing acknowledged that testing had already occurred but did not "present any argument about newer testing techniques"). Accordingly, it appears that Smith may not have laid the proper foundation for requesting the retesting of his DNA sample.

Turning to Smith's arguments, he urged in his motion that A.T. was unable to identify him as the assailant and instead identified J.R.T. in a photo lineup. Regarding the lineups, Detective Tammy Bracewell testified during the trial that after Smith was identified as a suspect, she showed A.T. a photo lineup with Smith in it and that A.T. was not able to pick out her attacker from that lineup. In addition, Detective Bracewell related that before Smith was a suspect in the case, she asked A.T. to look at a photo lineup that included J.R.T. as well as five other men but did not include Smith. When describing A.T.'s reaction to the lineup, Detective Bracewell explained that A.T. related that she "d[id]n't know" if the assailant was in the lineup but that if she had to pick someone, J.R.T. looked the most like the person that she remembered from the assault because of his dark skin and hairline. However, Detective Bracewell clarified that A.T. did not make a positive identification of J.R.T. as the assailant.

Moreover, in her testimony during the trial, A.T. identified Smith as her attacker. In particular, although A.T. admitted that it was "very dark" when the attack happened and that she did

10

not get a good look at the man, she described her assailant as an African-American man who was taller than she was and identified Smith as the man that she believed attacked her. In addition, she explained that she could identify Smith as her attacker, in part, because his ears are distinctively big and "stick out" and because she was able to see that part of her attacker's head during the assault. Further, A.T. explained that her attacker stole personal items from her, including her cell phone.

After A.T. identified Smith as her attacker, Brandy Henderickson, who was a co-worker of Smith's and was sharing a hotel with Smith on the night in question, testified that Smith told her that night that "he was so horny that he was seeing blurry" and needed to find a girlfriend, that he left the hotel room shortly thereafter, and that when he returned the following morning, he had a new cell phone with him. That phone was seized by the police when they went to the hotel room as part of their investigation and was later shown to belong to A.T.

Moreover, evidence was presented establishing that a biological sample taken from A.T.'s vagina matched the DNA profile from the sample that Smith provided. *Cf. Blacklock v. State*, 235 S.W.3d 231, 232 (Tex. Crim. App. 2007) (concluding that in case where DNA testing had already been done for trial *but was inconclusive on issue of identity* and where convicted person sought testing of biological evidence left by single assailant, "exculpatory test results, excluding [Blacklock] as the donor of this material, would establish [his] innocence" because his motion "alleged" and "show[ed] by a preponderance of the evidence[] that the victim's lone attacker is the donor of the material for which [he] seeks DNA testing"). Specifically, the forensic analyst who tested the samples, Serena Zboril, testified that she found "[a] single source DNA profile" for sperm from the sample taken from A.T.'s vagina, meaning that there was only DNA from one person's

11

sperm. Moreover, she explained that the profile from the sample was consistent with Smith's, that Smith could not be excluded as a contributor, that "[t]he probability of selecting an unrelated [] person at random who could be the source of this DNA profile is about" one in 5.464 quintillion for African Americans, and that "[t]o a reasonable degree of scientific certainty," Smith was "the source of this sperm fraction of the vaginal swabs." Moreover, she related that she did not need to test any other samples because she "only found a single source profile in [the] sperm fraction" and that profile matched Smith's.

In addition, Smith has failed to explain and nothing in the record shows how his DNA profile could match that of the sample collected from A.T. other than through sexual intercourse. To the extent that Smith is suggesting that identity could have been an issue because of the alleged absence of a chain of custody or the potential for contamination between his sample and J.R.T.'s, we note that evidence concerning both topics was presented during the trial. *See Sereal v. State*, No. 01-09-00192-CR, 2011 WL 1234739, at *3 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, pet. ref'd) (mem. op., not designated for publication) (explaining that chain of custody may be established "through witness testimony"). In particular, Officer Steve Ermis testified that he was the one who took the sample from Smith by swabbing the inside of Smith's cheek; that he placed the swab in the original packaging; that he sealed the packaging in an evidence envelope; that he wrote the case number, his badge number, and the date on the envelope; and that he placed the envelope in a locked storage locker until he was able to take it to the evidence technician. Regarding the sample taken from J.R.T., Detective Bracewell explained that she was present when another officer took the sample from him. Further, she explained that the sample taken from Smith and the sample taken

12

from J.R.T. were obtained by different police officers, that the samples were taken on separate days, and that the samples were stored in different locations.

After the officers concluded their testimonies, the evidence intake technician for the Temple Police Department, Monna Herring, testified regarding how the various types of evidence in this case were identified and stored. Specifically, Herring explained that in general she receives all pieces of evidence that the various officers collect, verifies them, labels them, and stores them. Moreover, she related that she received from Officer Ermis the biological sample that he took from Smith, that she labeled the sample as swabs taken from the "suspect," and that she stored the sample until she transferred it to the lab for testing. Regarding the sample obtained from J.R.T., Herring explained that she received that sample later from Detective Bracewell, and Herring related that she labeled the sample as swabs from J.R.T. She also explained that she took both samples to the lab for testing but that she took the sample from Smith first and the sample from J.R.T. approximately two months later. In her testimony, Herring emphasized that she would not have mislabeled the samples or exchanged them, that there was zero chance that she took the wrong sample to be tested, and that the samples were stored separately. Similarly, Zboril explained that when she was performing testing on the sample obtained from Smith, there was no potential for contamination between the sample taken from Smith and the one taken from J.R.T. because she did not open or test the sample from J.R.T.

For all of these reasons, we must conclude that the district court did not err by determining that identity is not an issue in this case and, therefore, by denying Smith's request for DNA testing. Accordingly, we overrule Smith's two issues on appeal.

13

**CONCLUSION**

Having overruled both of Smith's issues on appeal, we affirm the district court's order denying Smith's request for DNA testing.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   June 10, 2016

Do Not Publish