# NO. 12-23-00246-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EDWARD HILL,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Edward Hill, appeals the trial court's denial of his second motion for post-conviction DNA testing. We affirm.

## BACKGROUND

Appellant was convicted of capital murder and sentenced to imprisonment for life in connection with the 1999 robbery and shooting death of convenience store operator Bo Hinton. We subsequently affirmed his conviction. *See Hill v. State*, No. 12-03-00020-CR, 2004 WL 2158030 (Tex. App.—Tyler Sept. 22, 2004, pet. ref'd) (mem. op., not designated for publication) (*Hill I*). In our legal sufficiency analysis in *Hill I*, we summarized the facts of the offense as follows:

> In the instant case, both eyewitness testimony and DNA evidence link Appellant to the scene of the crime during the time frame in which the crime was committed. Curtis Lowe testified that he saw [co-defendant Jackie] Andrews and two black males approaching Loving's Food Store as he was leaving the store at approximately 8:30 a.m. on August 18, 1999. Christina Carillo, a store employee, arrived for work before 9:00 a.m. but did not enter the store because she observed through the window that Hinton was inside fighting with two other individuals. Brenda London, Angela Hood, and Leo Henry testified that, shortly after 9:00 a.m., they saw three black males running away from Loving's Food Store.

With the aid of information provided by witnesses, Tyler police officers proceeded to the home of Andrews's mother, Betty Andrews. At about this same time, police arrived at Loving's Food Store to find Hinton bleeding to death from five gunshot wounds. When the officers arrived at the Andrews home, they found Appellant, [co-defendant Thadius] Davis, and Andrews. When Patrolman Robert Matthews of the Tyler Police Department approached the three men, who were standing in the yard, Appellant fled. Other Tyler police officers pursued and captured Appellant. Patrol Officer Luis Correa saw Appellant drop a bloody tee shirt as he fled. Officer Correa also saw Appellant take a large sum of cash out of his pocket along with a latex glove and drop them three or four feet from where he was subsequently apprehended.

Hinton's blood was found on the tennis shoes Appellant was wearing at the time of his arrest. Bob Henderson, a forensic consultant specializing in blood stain pattern analysis and crime scene reconstruction, testified that the blood on the tennis shoes was consistent with impact spatter, which occurs at close range when a victim's blood is being spilled. He also testified that there were blood spatters on the shorts Appellant was wearing. He testified that these blood spatters would put the individual wearing the shorts and tennis shoes in very close proximity to Hinton when he was shot.

*Id.* at *2.

Following his conviction, Appellant filed multiple applications for writ of habeas corpus, all of which were either denied or dismissed. In July 2018, Appellant moved for forensic DNA testing of (1) the .22 caliber revolver admitted into evidence at trial and believed to be the murder weapon and (2) the latex glove, also admitted into evidence, that Appellant removed from his pocket and discarded just before his arrest. The record showed that the pistol had been either lost or destroyed. However, as to the latex glove, the trial court denied the motion because Appellant failed to establish by a preponderance of the evidence that if exculpatory results were obtained from the glove, he would not have been convicted. We subsequently affirmed the trial court's denial of Appellant's first motion for post-conviction DNA testing. *See* **Hill v. State**, No. 12-20-00154-CR, 2021 WL 4898455, at *1 (Tex. App.—Tyler Oct. 20, 2021, pet. ref'd) (mem. op., not designated for publication) (**Hill II**).

On July 31, 2023, Appellant filed his second motion for post-conviction DNA testing, wherein he sought forensic DNA testing of (1) the shirt, shoes, and shorts he was wearing at the time of Hinton's murder; and (2) the aforementioned latex glove (referred to as "State Exhibit 51" in the motion).[1] The trial court denied Appellant's motion, and this appeal followed.

---

[1] The shirt, shorts, and shoes were previously subjected to DNA testing, which showed that the blood on each item belonged to Hinton, the murder victim. **Hill v. State**, No. 12-20-00154-CR, 2021 WL 4898455, at *3 (Tex. App.—Tyler Oct. 20, 2021, pet. ref'd) (mem. op., not designated for publication). The latex glove was not previously subjected to DNA testing. However, previous laboratory testing of the latex glove revealed traces of barium and lead, which are commonly released from the sides of a gun when it is fired but are not commonly found on latex gloves. **Hill v. State**, No. 12-03-00020-CR, 2004 WL 2158030, at *3 (Tex. App.—Tyler Sept. 22, 2004, pet. ref'd) (mem. op., not designated for publication).

**DENIAL OF DNA TESTING MOTION**

In his sole issue, Appellant argues that the trial court erred in failing to order DNA testing on the clothing and latex glove.

**Standard of Review and Applicable Law**

Generally, we review a judge's ruling on a Chapter 64 motion under a bifurcated standard of review. ***Ramirez v. State***, 621 S.W.3d 711, 718 (Tex. Crim. App. 2021). We afford almost total deference to the trial court's determination of issues of historical fact and issues of application of law to fact that turn on credibility and demeanor of witnesses but review de novo all other application of law to fact questions. ***Id.*** Since the trial court did not hold a hearing on Appellant's motion for DNA testing and the trial record and affidavit of the Appellant are the only sources of information supporting the motion, the trial court was in no better position to determine the remaining issues, and we review the trial court's denial of Appellant's motion de novo. *See **Smith v. State***, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005); ***Trejo v. State***, No. 14-14-00513-CR, 2015 WL 7306423, at *1 (Tex. App.—Houston [14th Dist.] Nov. 19, 2015, no pet.) (mem. op., not designated for publication).

There is no freestanding due process right to DNA testing, and the task of fashioning rules to harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice belongs primarily to the legislature. ***Ramirez***, 621 S.W.3d at 717. The Texas Legislature created a process for such testing in Chapter 64. *See **id.*** Under Chapter 64, the convicting court must order DNA testing only if the court finds that (1) the evidence "still exists and is in a condition making DNA testing possible"; (2) the evidence "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect"; (3) "there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing;" and (4) "identity was or is an issue in the case[.]" ***Id.***; TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1). Additionally, the convicted person must establish by a preponderance of the evidence that (1) he "would not have been convicted if exculpatory results had been obtained through DNA testing;" and (2) "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." ***Ramirez***, 621 S.W.3d at 717-18; TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2). An "exculpatory" or "favorable" DNA test result must be the sort of

3

evidence that would affirmatively cast doubt on the conviction's validity; otherwise, DNA testing would simply "muddy the waters." ***Ex parte Gutierrez***, 337 S.W.3d 883, 892 (Tex. Crim. App. 2011).

To satisfy the requirements of Chapter 64, the appellant's motion must be accompanied by an affidavit containing statements of fact in support of the motion; it is not enough to merely allege that the requirements have been met. TEX. CODE CRIM. PROC. ANN. art. 64.01(a–1); ***Dinkins v. State***, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002). When seeking retesting of evidence that was previously subjected to DNA testing, the convicted person must show that the evidence "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test[.]" TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2). In cases involving accomplices, a defendant can meet his burden under Article 64.03(a)(2)(A) only if he can show that testing, if exculpatory, will establish that he did not commit the crime as either a principal or a party. ***Ramirez***, 621 S.W.3d at 723.

## Analysis

We note initially that Appellant's affidavit in support of his motion does not contain any statements of fact relevant to his request for DNA testing. Instead, it merely states that he "read the attached Motion for Forensic DNA Testing and hereby state[s] that said Motion is true and correct." For this reason alone, the motion is insufficient to satisfy the requirements of Chapter 64, and the trial court did not err in denying same. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(a–1). Even if this were not the case, Appellant's motion is insufficient to require the trial court to grant the requested DNA testing.

Appellant's motion fails even to assert in a conclusory manner any of the requirements contained in Article 64.03. As to the latex glove, the motion states only that it was not previously subjected to DNA testing. However, he contends on appeal that DNA testing of the glove would reveal the absence of Hinton's DNA thereon, which would "exculpate Appellant for the intentional murder" of Hinton. This appears to be the same argument Appellant advanced in ***Hill II***, and we find it unpersuasive here for the same reasons we set forth therein:

> [A] DNA test on the glove failing to reveal the presence of Hinton's DNA might tend to show that the shooter was not wearing the glove on his shooting hand at the time of the shooting, but it would not establish Appellant's innocence. First, it would not show that Appellant was not the shooter, as he contends. The evidence shows that no fingerprints were found on the revolver,

which supports the theory that the shooter was wearing a glove when he shot Hinton. But Appellant could have shot Hinton wearing a different glove on his shooting hand and discarded it elsewhere. Furthermore, if testing on the glove failed to reveal the presence of Hinton's DNA, it would do little or nothing to exculpate Appellant as a party to the offense… Given the evidence that (1) Appellant and his codefendants knew they would need a gun to commit the robbery, (2) two people were fighting Hinton just before he was shot, (3) Appellant fled when the police arrived, (4) Appellant discarded a bloody shirt, a latex glove, and a large amount of cash just before his arrest, and (5) Appellant's clothes contained close range blood spatter matching Hinton's DNA, testing of the glove "might muddy the waters," but could not produce truly exculpatory evidence.

2021 WL 4898455 at *3. We conclude that the trial court properly denied Appellant's motion for DNA testing of the glove.

Regarding the previously tested articles of clothing, Appellant's motion states in a conclusory fashion that the items "can now be subjected to testing with newer testing techniques that provides [sic] a reasonable likelihood of results that are more accurate and probative than the results of the previous test." He does not explain what newer testing techniques are available, what result he anticipates the additional testing would produce, or how that result would cast doubt on the validity of his conviction. Further, he does not present "any specific information about how present methods of DNA testing could be used to exonerate him[.]" *Hamilton v. State*, No. 09-05-00003-CR, 2006 WL 61937, at *3 (Tex. App.—Beaumont Jan. 11, 2006, no pet.) (mem. op., not designated for publication) (citing *Dinkins*, 84 S.W.3d at 642). Appellant fails to satisfy Article 64 regarding the shirt, shoes, and shorts, and we conclude that the trial court properly denied his motion for repeated DNA testing thereof.

For the foregoing reasons, we overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the judgment of the trial court. All pending motions are *overruled as moot*.

JAMES WORTHEN
Chief Justice

Opinion delivered March 28, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

5



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 28, 2024**

**NO. 12-23-00246-CR**

**EDWARD HILL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-81325-99)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*