

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00412-CR

Ramiro **TREVINO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 07-11-0317-CRA
Honorable Russell Wilson, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:       Rebeca C. Martinez, Justice
               Irene Rios, Justice
               Beth Watkins, Justice

Delivered and Filed: March 27, 2019

AFFIRMED

Ramiro Trevino appeals from the trial court's order denying his motion for DNA testing

related to his conviction for indecency with a child by contact. We affirm.

### BACKGROUND

On May 6, 2008, a jury found Trevino guilty of the offense of indecency with a child by

contact and assessed punishment at twenty years in prison. Trevino's conviction stemmed from

allegations made by D.E., a thirteen-year-old girl who was not related to Trevino. D.E. alleged that

on the night of May 21, 2007, Trevino touched her breasts and penetrated her vagina with his

fingers. On the same night, D.E. went to the hospital, where she was given a physical examination and swabbed for DNA. DNA testing was performed on the swabs taken from D.E. The swabs from D.E.'s vagina and underwear did not show the presence of any DNA consistent with Trevino's DNA; however, the swab from D.E.'s breasts showed the presence of DNA consistent with Trevino's DNA.

Trevino was charged with the offense of aggravated sexual assault of a child. He pleaded not guilty. The case was tried to a jury. D.E. testified at trial. Additionally, the forensic scientist who performed the DNA testing and analyzed the results, Robin Olson Castro, also testified at trial. According to Castro, the DNA profile obtained from the breast swab was consistent with a mixture from the complainant and Trevino, and Trevino could not be excluded as a contributor of "the major component in the profile." Castro further testified that DNA analysis involves a probability statistic and that, in this case, the probability of selecting an unrelated person at random who could be the source of the major component in this DNA profile was approximately 1 in 179.5 quadrillion for Caucasians, 1 in 95.69 quintillion for Blacks, and 1 in 16.51 quadrillion for Hispanics. Based on this statistical analysis, Castro concluded that, to a reasonable degree of scientific certainty, Trevino was the source of the major component of the breast swab, excluding identical twins. Castro's written report detailing her findings was also admitted into evidence. The jury found Trevino guilty of the lesser included offense of indecency with a child by contact.[1]

Ten years later, Trevino filed a motion for post-conviction DNA testing, seeking retesting of the breast swab. In the motion, Trevino alleged, among other things, that the biological material contained on the breast swab was capable of being retested "with newer testing techniques that

---

[1]Trevino appealed his conviction, complaining that his trial counsel was ineffective. We overruled Trevino's complaints and affirmed the trial court's judgment. *Trevino v. State*, No. 04-08-00639-CR, 2009 WL 2959648, at *1 (Tex. App.—San Antonio Sept. 16, 2009, pet. ref'd). Our mandate issued on March 25, 2010.

provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *See* TEX. CODE CRIM. PROC. ANN. art 64.01(b)(2)(A). Trevino's motion was based on a letter from the Texas Forensic Science Commission (TFSC) dated August 21, 2015, which advised members of the Texas criminal justice community of concerns about the statistical population database used to calculate DNA match statistics. The letter explained that the widely accepted consensus was that the database corrections had no impact on whether a defendant was included or excluded in any result. The letter further explained that empirical testing showed that the database corrections altered the probabilities associated with any particular inclusion.[2] The letter also addressed the impact of the database corrections on DNA mixture interpretation using a type of statistical calculation known as Combined Probability of Inclusion/Combined Probability of Exclusion (CPI/CPE).

The State filed a response to Trevino's motion, arguing that Trevino did not meet his burden to establish that he was entitled to retesting under Texas law. Specifically, the State argued that the results of any post-conviction DNA testing would not be material to the case's outcome because the statistical method used to interpret the DNA material in this case was Random Match Probability and not CPI/CPE. Therefore, according to the State, "[t]he concerns addressed by [the] Texas Forensic Science Commission's letter dated August 21, 2015, are not relevant to this case . . . ." The State further asserted Trevino's "allegation that the statistical analysis of the DNA was affected by CPI/CPE calculations ignores the fact that CPI/CPE calculations were not used in this case."

---

[2]According to the letter, empirical testing performed to assess the statistical impact of the corrected data showed that "the case with the most *substantially affected* Combined Probability of Inclusion/Combined Probability of Exclusion (CPI/CPE) statistical calculation changed from a 1 in 260,900,000 expression of probability to a 1 in 225,300,000 expression of probability." (emphasis in original).

The trial court considered Trevino's motion without a live hearing. The trial court made findings of fact and conclusions of law. In its findings, the trial court found that the DNA testing done in this case was not CPI/CPE testing, that Trevino failed to show that any still existing DNA material can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test, and that Trevino failed to show that any additional testing would likely produce exculpatory results. The trial court denied the motion for post-conviction DNA testing. This appeal followed.

## DISCUSSION

Chapter 64 of the Texas Code of Criminal Procedure governs motions for forensic DNA testing. A convicted person moving for post-conviction DNA testing must establish all of chapter 64's requirements. *Swearingen v. State*, 303 S.W.3d 728, 731 (Tex. Crim. App. 2010) (recognizing chapter 64 "requires multiple threshold criteria to be met before a convicted person is entitled to DNA testing."). Under article 64.01(b)(2)(A), evidence that was previously subjected to DNA testing qualifies for retesting if it "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2)(A). Additionally, a convicted person must establish that (1) the evidence exists in a condition making DNA testing possible; (2) the evidence has been subjected to a sufficient chain of custody to establish it has not been substituted, tampered with, replaced, or altered in any material respect; (3) identity was or is an issue in the case; (4) the person would not have been convicted had exculpatory results been obtained through DNA testing; and (5) the request for DNA testing is not made to unreasonably delay the execution of the sentence or interfere with the administration of justice. *Id*. art. 64.03(a).

We review the trial court's order on a motion for DNA testing under a bifurcated standard of review. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017). Under this standard, we

afford almost total deference to the trial court's determination of issues of historical fact and issues of application-of-law-to-fact that turn on credibility and demeanor of witnesses, while we review de novo other issues of application-of-law-to-fact questions that do not turn on the credibility and demeanor of witnesses. *Id.* at 768-69. Because no witness testimony was presented in this case, we review the trial court's order de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005) (applying a de novo standard when the DNA testing motion was supported exclusively by documents).

On appeal, Trevino argues the trial court erred in denying his motion for DNA testing because he met his burden to establish all of chapter 64's requirements. We first consider whether Trevino established the threshold requirements that the biological material on the breast swab "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2)(A). The State argues that Trevino did not satisfy these requirements because his motion failed to describe any "newer testing techniques" and to demonstrate that any such techniques would be more accurate and probative than the DNA testing methodology previously employed in this case.

We agree with the State that Trevino's motion fails to satisfy the requirements set out in article 64.01(b)(2)(A). The motion does not demonstrate the existence of new testing techniques, nor does it demonstrate that any such techniques would provide a reasonable likelihood of results that are more accurate and probative than the previous results. In the section of his motion titled "Newer, More Accurate Testing," Trevino cites to the TFSC letter dated August 21, 2015, and a follow-up report prepared on May 27, 2016, by Castro, the forensic scientist who performed the DNA testing at trial. Trevino then argues that "the factors noted in the August 21, 2015 TFSC letter" "may have" enhanced the "probability calculations" in the DNA report admitted at trial.

However, Trevino's motion does not identify new testing techniques or explain how retesting would provide a reasonable likelihood of results that are more accurate and probative than the previous results. *See Simpson v. State*, No. 04-12-00114-CR, 2013 WL 351666, at *2 (Tex. App.—San Antonio Jan. 30, 2013, pet. ref'd) (not designated for publication) (concluding that the bare allegations contained in the appellant's motion and affidavit failed to establish a reasonable likelihood that retesting of DNA material would provide more accurate and probative results); *Flores v. State*, No. 04-09-00457-CR, 2010 WL 1904993, at *3-4 (Tex. App.—San Antonio May 12, 2010, pet. ref'd) (not designated for publication) (concluding that the appellant failed to establish his entitlement to DNA retesting when nothing in the information he provided demonstrated a reasonable likelihood that retesting would provide more accurate or probative results).

Both the August 21, 2015 TFSC letter and Castro's May 27, 2016 follow-up report were attached to Trevino's motion. The TFSC letter discusses the corrections made to the statistical population database used to calculate DNA match statistics and notes that "[t]he widely accepted consensus among forensic DNA experts is the database corrections have *no impact* on the threshold question of whether a victim or defendant was *included or excluded* in any result." (emphasis in original). The letter next addresses whether and to what extent the probabilities associated with any particular inclusion may be altered by the corrected data. The letter finally addresses the impact of the database corrections on DNA mixture cases using the CPI/CPE statistical calculation. Castro's follow-up report states that she re-evaluated Trevino's case in accordance with the criteria established by TFSC in late 2015 and concluded that "reinterpretation may not be necessary" because "CPI was not used for statistical analysis in this case." Thus, the documents submitted in support of Trevino's motion actually demonstrate that the concerns

articulated in the TFSC letter are irrelevant in this case because CPI calculations were not used to analyze the DNA test results admitted at trial.

We conclude that Trevino failed to meet his burden to establish that the biological material in question "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test" in this case. *See* TEX. CODE CRIM. PROC. ANN. art 64.01(b)(2)(A).

To succeed on his motion for post-conviction DNA testing, Trevino was required to establish all of chapter 64's requirements. *See Swearingen*, 303 S.W.3d at 731. Because we have determined that Trevino failed to establish the requirements for retesting under article 64.01(b)(2)(A), we need not decide if Trevino established chapter 64's other requirements. We conclude the trial court did not err in denying Trevino's motion for post-conviction DNA testing.

## CONCLUSION

The trial court's order denying Trevino's motion for post-conviction DNA testing is affirmed.

Irene Rios, Justice

Do not publish