# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-19-00745-CR
NO. 03-19-00746-CR

**In re Derek Rice**

---

FROM THE 299TH DISTRICT COURT OF TRAVIS COUNTY
NOS. D-1-DC-02-204170, D-1-DC-02-500400
THE HONORABLE KAREN SAGE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Derek Rice was convicted of aggravated kidnapping and aggravated sexual assault in 2003. *See* Tex. Penal Code §§ 20.04, 22.021. Several years later, Rice filed motions requesting that samples collected during the investigation of the underlying offenses be retested and requesting appointment of counsel under the Code of Criminal Procedure provisions for post-conviction DNA testing. *See* Tex. Code Crim. Proc. arts. 64.01-.05. After reviewing the motions and the State's response, the trial court denied the motions. Rice appeals the trial court's order denying his motions. We will affirm the trial court's order.

## BACKGROUND

**Underlying Trial**

The victim in Rice's aggravated-kidnapping and aggravated-sexual-assault convictions was his then wife, R.R. *See Rice v. State*, Nos. 03-04-00130—00131-CR, 2005 WL 3234409, at *1 (Tex. App.—Austin Dec. 1, 2005, pet. ref'd) (op., not designated for publication).

At trial, R.R. testified that Rice surprised her at her place of employment when she was alone, put her in a headlock, forced her to the warehouse area, hit her, and removed her pants. Next, R.R. stated that Rice told her to perform oral sex on him, that he penetrated her anus with his penis after she gagged, that she screamed "because it hurt," that he hit her when she pleaded for him to stop, that he put a strap around her neck after she tried to escape, that he pulled the strap to where she could not breathe, and that he continued to have anal intercourse with her. R.R. testified that Rice forced her out of the building and into his car and tied her hands behind her back with a shoelace. Regarding what happened after they left the building, R.R. related that Rice drove her to the hotel where he had been staying, untied her hands, made her perform oral sex on him again, forced her to have anal and vaginal intercourse, and ejaculated on her stomach and in her mouth. R.R. stated that she ran to a nearby house after Rice fell asleep and that the owner of the house called the police at her request.

Several law-enforcement officials also testified regarding their investigation. One officer testified about R.R.'s statements to him describing the offense, which were consistent with R.R.'s testimony. The officer described injuries that he noticed to R.R.'s face and neck and related that he found a shoelace in Rice's bathroom when Rice was arrested. Another officer testified that he found pants and underwear at R.R.'s work and found a strap near the clothes.

A sexual-assault-nurse examiner (SANE) testified that she performed a sexual-assault examination on R.R. on the night in question. In her testimony, the SANE related the statements that R.R. made describing the assault, and the SANE's testimony was consistent with R.R.'s description of the offenses summarized above. Regarding her examination, the SANE explained that R.R. had areas of tenderness on her chin, head, and shoulder; that R.R. had red marks on her neck, wrists, back, and arm; that R.R. had bruises and scratches on her legs and on

2

one of her elbows; that there was a mark on R.R.'s neck that was consistent with a ligature being placed around her neck; that R.R. had injuries to her wrists that were consistent with being tied up; that R.R. had an abrasion and a tear on her labia minora; that R.R. had multiple tears on her anus; and that R.R. had lacerations on her cervix. Further, the SANE related that she swabbed various parts of R.R.'s body for DNA testing.

After the SANE finished testifying, a DNA analyst was called to the stand. In her testimony, the analyst stated that testing done on the strap collected from R.R.'s place of work produced a DNA profile that was consistent with R.R.'s DNA and that the amount of DNA was indicative "of a consistent exposure to somebody's body surface" and not a passive touching. Similarly, the analyst related that testing done on the shoelace recovered from Rice's hotel room was consistent with a DNA mixture from Rice and R.R. and that "the random match probability of having both persons would be one in 415,000 for Caucasians, one in . . . 1,350,000 for [African Americans,] and one in 224,000 for [H]ispanics." The analyst also testified that the swab from an area near R.R.'s mouth had a presumptive positive result for semen, that testing on the swab showed a DNA profile consistent with a mixture of Rice's and R.R.'s DNA, that Rice could not be excluded as the contributor to the major component of the profile, and that the odds of "collecting an unrelated person at random who could be the source of the ma[in] component in this DNA profile is approximately one in 901 trillion for [C]aucasians, one in 6.37 quadrillion for [African Americans], and one in 4.9 quadrillion for Hispanics." Regarding samples from R.R.'s fingernails, the analyst explained that testing on those swabs produced a DNA profile consistent with a mixture of Rice's and R.R.'s DNA; that the match probability for having both persons in the sample from the right fingernail is "one in 3,140,000 for Caucasians, one in 16,900 for [African Americans], and one in 1,200,000 for [H]ispanics"; and that the match

3

probability for the left fingernail was "one in 1,160,000 for Caucasians, one in 4,120,000 for [African Americans,] and one in 500,000 for [H]ispanics."

In his case-in-chief, Rice elected to testify and related that he was helping R.R. at her work on the night in question, which he asserted was a regular occurrence. Further, Rice stated that he and R.R. had sex at her work, that they later went to his hotel room and continued having sex, and that R.R. asked to be tied up. Rice described the sexual activity as consensual, stated that he fell asleep after having sex with R.R., and related that the police came to his hotel room later that evening while he was in bed. Rice also admitted that he had previously been convicted of sexually assaulting R.R. and that there were other times when his sexual encounters with R.R. were not consensual.

After considering the evidence presented at trial, the jury found Rice guilty of aggravated kidnapping and aggravated sexual assault.

**Events Occurring After the Trial**

More than a decade later, the Travis County District Attorney informed Rice that his case "***might possibly*** be impacted by recent scientific developments relating to DNA evidence." In particular, the District Attorney stated that the DNA analysis for one or more of the samples tested in the underlying case used the FBI's population database that "was recently found to contain minor discrepancies" or that the lab used a protocol "that was adopted by the lab prior to recent scientific developments relating to the interpretation of DNA mixtures." Further, the District Attorney stated that the lab may be able to re-calculate the DNA results, explained that Rice could request the "re-calculation of those DNA results" by contacting the Capital Area Private Defender Service ("Defender Service"), and included a letter from

the Defender Service describing his options, a form that Rice could fill out and mail to the Defender Service requesting re-calculations of the DNA results in his case, and a copy of a letter from the Texas Forensic Science Commission (the "Commission") to "Members of the Texas Criminal Justice Community" providing a more detailed explanation of recent changes in DNA interpretation.

In the letter from the Defender Service, the Defender Service explained that the evidence in Rice's case included "DNA mixture evidence," meaning that there was DNA from more than one person in the sample, and that laboratory results often include statistical information stating how probable it is that an unrelated person "could be included in the DNA mixture." Further, the Defender Service stated that a common statistical method used previously did not account for certain "scientific limitations" and instructed Rice to fill out the attached form if he would like the DNA results "recalculated on the DNA mixture issue."

The letter from the Commission provided additional details explaining the discrepancies that could have occurred in testing "where multiple contributors may be present." Specifically, the Commission explained that the population database from the FBI had "minor discrepancies" in it but that "[t]he FBI has provided corrected allele frequency data to all CODIS laboratories." Further, the Commission related that DNA experts have determined that "the database corrections have *no impact* on the threshold question of whether a victim or defendant was *included or excluded* in any result." Regarding the potential extent to which "the probabilities associated with any particular inclusion" could have changed, the Commission explained that FBI testing has shown that "the difference between profile probabilities using the original data and the corrected data is less than a two-fold difference in a full and partial profile." In fact, the Commission stated that testing by Texas laboratories has shown that any

5

discrepancies were significantly less than the two-fold estimate. Additionally, the Commission related that there have been changes in "interpretation protocols" for DNA mixtures unrelated to the data correction that may lead to different results if the lab had a different protocol in place when the report was originally run. However, the Commission clarified that there was no indication that any labs or analysts "did anything wrong intentionally" and that the protocol changes were prompted by advancements in the ability to interpret DNA results. Accordingly, the Commission stated that interested parties could request confirmation that inclusion or exclusion determinations were made using the current protocols or request a "re-analysis" of those determinations if the laboratory could not confirm the use of current protocols.

A few years later, Rice filed a motion under chapter 64 of the Code of Criminal Procedure seeking retesting of samples that were collected during the investigation and a motion seeking the appointment of counsel. *See* Tex. Code Crim. Proc. arts. 64.01-.05. The State filed a response opposing Rice's requests and arguing that Rice had not met the requirements of chapter 64 pertaining to retesting and the appointment of counsel. After considering the parties' arguments, the trial court determined that the statutory requirements for ordering post-conviction DNA retesting were not met and that reasonable grounds for filing the request for retesting were not present. Accordingly, the trial court denied Rice's motion for DNA retesting and his motion seeking the appointment of counsel.

Rice appeals the trial court's order denying his motions.

**GOVERNING LAW AND STANDARD OF REVIEW**

Chapter 64 of the Code of Criminal Procedure governs post-conviction DNA testing. *See* Tex. Code Crim. Proc. arts. 64.01-.05. Chapter 64 "is simply a procedural vehicle

6

for obtaining evidence" to be used in a later habeas proceeding, *In re Garcia*, 363 S.W.3d 819, 822 (Tex. App.—Austin 2012, no pet.), "authorizes DNA testing in cases in which the applicant meets the requirements enumerated," *id.* at 821-22 (citing Tex. Code Crim. Proc. art. 64.03), and allows appellate courts to review a trial court's order denying DNA testing, Tex. Code Crim. Proc. art. 64.05.

Under chapter 64, a previously convicted person may file a motion seeking forensic testing of evidence "that has a reasonable likelihood of containing biological material," and "[t]he motion must be accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion." *Id.* art. 64.01(a-1). In addition, the person "may request forensic DNA testing" or retesting "only of evidence . . . that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense" provided that certain requirements are met. *Id.* art. 64.01(b). For retesting, a convicted person may request testing of samples that were previously tested "at a laboratory that ceased conducting DNA testing after an audit by the Texas Forensic Science Commission revealed the laboratory engaged in faulty testing practices" and were tested "during the period identified in the audit as involving faulty testing practices." *Id.* art. 64.01(b)(2)(B). Alternatively, a convicted person may request retesting of samples that "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *Id.* art. 64.01(b)(2)(A).

Generally speaking, when reviewing a trial court's decision regarding DNA testing, appellate courts "defer to the trial court's determination of historical facts, and its application of law to the facts if it turns on credibility and demeanor, and review de novo

7

applications of law to the undisputed facts," *Caddie v. State*, 176 S.W.3d 286, 289 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd), "including the ultimate question of whether the trial court was required to grant a motion for DNA testing," *Flores v. State*, 150 S.W.3d 750, 752 (Tex. App.—San Antonio 2004, no pet.). However, in a case like this one where no witnesses testified at a hearing, appellate courts review a trial court's rulings de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005); *see also Flores*, 150 S.W.3d at 752 (explaining that "[t]he scope of evidence that an appellate court may review on appeal from the denial of a post-conviction motion for DNA testing is not limited to evidence relating to the motion and/or hearing on the motion for DNA testing").

## DISCUSSION

In his two issues on appeal, Rice contends that the trial court erred by denying his motion seeking to retest various samples collected during the investigation and his motion seeking the appointment of counsel.

**Retesting**

On appeal, Rice asserts that the testing performed on the samples collected during the investigation of the underlying case was performed by an accredited lab that was later audited by the Commission for incorrect testing procedures and protocols, that his case was one of the cases affected by the errors, that the lab was subsequently closed, and that the DNA analyst who performed the testing in his case was dismissed for the errors. Accordingly, Rice contends that he was entitled to have the samples collected during the investigation retested. *See* Tex. Code Crim. Proc. art. 64.01(b)(2)(B). Further, Rice asserts that exculpatory DNA testing would establish that the identity of the attacker is an issue and asserts that his admission at trial

8

to having sex with R.R. on the night in question does not foreclose a determination that identity is an issue because chapter 64 prohibits a trial court "from finding that identity was not an issue in the case solely on the basis of" a defendant's plea, admission, or confession. *See id.* art. 64.03(b). Similarly, Rice urges that the trial court erred when it denied his motions because he established by a preponderance of the evidence that he would not have been convicted had exculpatory results been obtained. *See id.* art. 64.03(a)(2)(A); *see also Blacklock v. State*, 235 S.W.3d 231, 233 (Tex. Crim. App. 2007) (commenting that victim's testimony "that she knew appellant and identified him as her attacker is irrelevant to whether appellant's motion for DNA testing makes his identity an issue and whether it shows that exculpatory DNA tests would prove his innocence" and that "a defendant, who requests DNA testing, can make identity an issue by showing that exculpatory DNA tests would prove his innocence").[1]

---

[1] In his brief, Rice also presents several arguments regarding the propriety of his conviction. For example, Rice challenges the validity of the testimony from some of the witnesses presented at trial, asserts that he was improperly denied the opportunity to introduce evidence showing that R.R. had made false claims against him before his arrest in this case, contends that the SANE improperly provided testimony on matters on which she was not a qualified expert, asserts that the State failed to disclose exculpatory information, argues that the trial court erred by failing to compel a witness to testify, claims that the State destroyed material evidence before the trial, and notes that his trial attorney was unable to obtain independent testing of the biological samples collected during the investigation. In light of the preceding, Rice urges that these errors violated several of his constitutional rights and violated several Rules of Evidence. Further, he asserts that he is entitled to habeas relief under article 11.073 of the Code of Criminal Procedure because the testimony from the analyst who performed DNA testing in the underlying case has been proven false. *See* Tex. Code Crim. Proc. art. 11.073. However, these arguments are beyond the limited scope of an appeal under chapter 64, and therefore, we cannot consider those claims in this appeal. *See Nelson v. State*, No. 03-12-00187-CR, 2014 WL 902497, at *1 (Tex. App.—Austin Mar. 5, 2014, no pet.) (mem. op., not designated for publication) (noting that appellant argued in request for DNA testing that his trial attorney provided ineffective assistance of counsel, that trial judge was not impartial, and that State presented improper argument, determining that this Court did not have jurisdiction over those claims in chapter 64 proceeding, and explaining that "we may not consider any claims that fall outside the scope of chapter 64"); *see also In re Garcia*, 363 S.W.3d 819, 822 (Tex. App.—Austin 2012, no pet.) (observing that "chapter 64 is not an invitation to review every potential

As an initial matter, we note that there are procedural hurdles to Rice's request to retest samples collected during the investigation. Chapter 64 does allow for requests to retest evidence that was previously subjected to DNA testing but *only* in limited circumstances and also requires a person seeking testing to submit "an affidavit, sworn to by the convicted person, containing statements of fact in support of" his motion. *See* Tex. Code Crim. Proc. art. 64.01(a-1), (b). When seeking relief, Rice seems to rely on the provision in chapter 64 authorizing retesting where the samples were tested at a laboratory "that ceased conducting DNA testing after an audit by the Texas Forensic Science Commission revealed the laboratory engaged in faulty testing practices" and were tested "during the period identified in the audit as involving faulty testing practices." *See id.* art. 64.01(b)(2)(B).

Although the record contains the motions that Rice filed with the trial court, no sworn affidavit accompanies the motions. *See id.* art. 64.01(a-1); *see Dunning v. State*, 572 S.W.3d 685, 697 (Tex. Crim. App. 2019) (explaining that defendant "must include an affidavit" when filing motion to obtain DNA testing). Accordingly, although Rice urges that the lab that tested the samples collected during the investigation was subsequently closed after an audit by the Commission discovered that the lab engaged in improper testing procedures and further alleges that the testing performed in his case was performed during the time period identified in the audit as using faulty practices, *see* Tex. Code Crim. Proc. art. 64.01(b)(2)(B), no sworn statement of facts supports those contentions.

---

error in the underlying trial proceedings" and does not "confer jurisdiction on appellate courts to consider 'collateral attacks on the trial court's judgment or to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles'" (quoting *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd))).

Even though letters in the clerk's record from the District Attorney, the Defender Service, and the Commission state that Rice's case could potentially be impacted by recent changes to the FBI's population database for DNA testing and by updated interpretation protocols, none of those letters say that the lab that tested the samples at issue had been closed after an audit by the Commission. In fact, the letter from the Commission explained that the potential "minor discrepancies" did not mean that any lab or any analysts did anything wrong when performing the testing at issue and that the changes in interpretive tools resulted from recent advancements in DNA interpretation.

As set out above, in addition to the provision regarding audits by the Commission, retesting can be ordered when the samples "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *Id.* art. 64.01(b)(2)(A). However, Rice does not specify any newer testing techniques that could be used to retest the samples that were collected in the underlying investigation. Moreover, to the extent that Rice's motion can be construed as requesting the statistical recalculations mentioned in the letters from the District Attorney, the Defender Service, and the Commission, those recalculations would not "require the . . . samples to be retested" to obtain the results and, therefore, do not qualify as a newer testing technique contemplated under chapter 64 because they do not involve a "method used in testing the sample." *See Loveday v. State*, Nos. 09-16-00452, -00460, -00461-CR, 2017 WL 5179954, at *3 (Tex. App.—Beaumont Nov. 8, 2017, no pet.) (mem. op., not designated for publication); *see also id.* (upholding trial court's denial of request for DNA testing even though defendant had been informed that testing relied on FBI population database that contained errors). Furthermore, Rice has already been given the opportunity to have those recalculations made

11

through a procedure outside of chapter 64, and nothing in the record before this Court indicates that Rice has requested that the DNA testing results be recalculated as directed in the District Attorney's letter.

For these reasons, we cannot conclude that the trial court erred by concluding that the requirements for retesting were not satisfied in this case and, accordingly, overrule Rice's first issue on appeal.

**Appointment of Counsel**

In his second issue on appeal, Rice contends that the trial court erred by failing to appoint him counsel as part of his request for DNA testing after the trial court determined that there were no reasonable grounds for the filing of the motion for post-conviction DNA testing.

Under the Code of Criminal Procedure, a trial court is required to appoint counsel for a chapter 64 proceeding "if the person informs the court that the person wishes to submit a motion under this chapter, the court finds reasonable grounds for a motion to be filed, and the court determines that the person is indigent." Tex. Code Crim. Proc. art. 64.01(c); *see also Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011) (noting that "[a]n indigent convicted person intending to file a motion for post-conviction DNA testing . . . has a limited right to appointed counsel"). "[W]hether 'reasonable grounds' exist for testing necessarily turns on what is required for testing." *Ex parte Gutierrez*, 337 S.W.3d at 891.

As set out above, the prerequisites for retesting DNA samples were not met in this case. *See* Tex. Code Crim. Proc. art. 64.01(b)(2). For that reason, we cannot conclude that the trial court erred by determining that reasonable grounds for filing the request for post-conviction retesting were not present and, accordingly, denying Rice's request for counsel. *Cf. Weems v.*

12

*State*, 550 S.W.3d 776, 781 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (determining that trial court did not err by denying request for appointment of counsel under chapter 64 where defendant "failed to demonstrate" that "the statutory preconditions to obtaining DNA testing" were met).

For these reasons, we overrule Rice's second issue on appeal.

## CONCLUSION

Having overruled Rice's two issues on appeal, we affirm the trial court's order denying his request for post-conviction DNA retesting and his request for the appointment of counsel.

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Kelly

Affirmed

Filed:   September 11, 2020

Do Not Publish

13