

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-20-00097-CR

———————————————————

PATRICK EVANS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 0989458D

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Opinion by Justice Wallach

## OPINION

Pro se Appellant Patrick Evans challenges the trial court's denial of his second motion for post-conviction forensic DNA testing under Chapter 64 of the Texas Code of Criminal Procedure.[1] *See* Tex. Code Crim. Proc. Ann. ch. 64. In a single point, Evans claims the trial court abused its discretion by denying his motion because, he argues, the trial court erroneously found that exculpatory results from the requested DNA tests were unlikely to have changed the jury's verdict. However, even if Evans's contention were true and the requested test results could have exonerated him, the trial court properly denied Evans's motion for post-conviction testing because (1) Evans's motion alleged facts which undermined Chapter 64's chain-of-custody requirement, and (2) Evans's motion was not accompanied by an affidavit, or a statutorily authorized substitute for an affidavit, as Chapter 64 requires. Therefore, we affirm the trial court's order.

## I. Background

Evans was convicted of capital murder and sentenced to life in prison after a jury found that he robbed and killed Melvyn Williams. Evans has maintained his innocence.

---

[1]References to the actions of the trial court include those actions taken by a criminal-law magistrate as part of the magistrate's delegated responsibilities and adopted by the trial court in accordance with Chapter 54, Subchapter H of the Texas Government Code. *See* Tex. Gov't Code Ann. §§ 54.651–.662.

**A. Evidence at Trial[2]**

At his capital-murder trial, Evans's associate, Mercutio "Kee Kee" Howard, testified that Evans told him he murdered Williams while the two men sat in Evans's Dodge Intrepid outside a Houston apartment complex in 2005. According to Kee Kee, Evans lured Williams out of his apartment and into the front seat of the Intrepid, then he shot Williams in the head and went into Williams's apartment to steal his drugs and guns. After the robbery, Evans put the dead body in the trunk of his Intrepid, drove the body from Houston to Fort Worth, recruited Kee Kee and two other men—Courtney Davis and Joseph Tolliver—to help Evans move Williams's body into a shed, and purchased a chainsaw with the intention of dismembering the body. Tolliver later helped detectives locate the murder weapon—a bloodstained .380 Davis Industries (DI) pistol—in the shed where Williams's body was found. The police recovered two other weapons as well: a 9mm Ruger pistol, and a .38 Special Smith & Wesson revolver. Evans denied any involvement in the murder; he claimed that Kee Kee, Tolliver, and Davis borrowed his Intrepid and committed the murder, and that Tolliver planted the murder weapon in the shed after the fact.

Before trial, the State ordered DNA testing of multiple pieces of evidence. An Orchid Cellmark laboratory conducted the testing and reported that the victim's

---

[2]A full recitation of the facts, detailing Kee Kee's version of events and Evans's version of events, is set forth in *Evans v. State*, No. 08-07-00213-CR, 2009 WL 2462538, at *1–3 (Tex. App.—El Paso Aug. 12, 2009, pet. ref'd) (not designated for publication).

DNA was confirmed or almost certain[3] to match the DNA found (1) inside the trunk of Evans's Intrepid; (2) in blood on a spare tire rim in the trunk of the Intrepid; (3) in blood on the murder weapon; (4) on the right front seatbelt loop of the Intrepid; and (5) on the Intrepid seatbelt and latch. The Cellmark laboratory also reported that Evans's DNA was almost certain[4] to match that found on the grip of the murder weapon.

In March 2007, the Crime Laboratory within the Forensic Division of the Fort Worth Police Department (FWPD) learned that two gun cartridges collected as evidence in Evans's case had been inadvertently swapped, resulting in the cartridges being mispackaged. The FWPD Crime Lab prepared an internal memorandum explaining how the "9mm [Ruger] and .380 [DI] cartridges[] were packaged incorrectly by laboratory personnel," and it surmised that "[m]ost probably the evidence was crossed during the fingerprint processing."

---

[3]Cellmark quantified the statistical accuracy of its findings by providing a frequency of occurrence. For the five listed DNA samples linked to the victim, the frequency of occurrence ranged from 1 in 54.08 quadrillion to 1 in 13.51 quintillion, varying by race.

[4]For the DNA sample from the grip of the murder weapon that was linked to Evans, the frequency of occurrence ranged from approximately 1 in 505.3 thousand to 1 in 10.65 million, varying by race.

Nonetheless, in June 2007, a jury convicted Evans of capital murder and the trial court sentenced him to life in prison.[5]

## B. Post-Conviction Motions

Over the decade that followed, Evans filed numerous appeals and petitions for writs of habeas corpus, none of which were successful in overturning his conviction.[6]

Then in 2019, Evans filed a motion for post-conviction forensic DNA testing under Chapter 64 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. ch. 64. His motion was accompanied by an unsworn declaration that was not made under penalty of perjury. Evans argued that he was entitled to post-conviction DNA testing of some of the evidence in his case—exactly what or how much was

---

[5]Evans does not allege that the State failed to disclose the March 2007 mix-up before his June 2007 conviction.

[6]Evans's conviction was affirmed on appeal. *Evans*, 2009 WL 2462538, at *1, *11. Evans then filed a petition for writ of habeas corpus, which the Texas Court of Criminal Appeals denied. *Ex parte Evans*, No. WR–76,891–02, 2012 WL 4449501, at *1 (Tex. Crim. App. Sept. 26, 2012, order) (per curiam) (not designated for publication). After his habeas petition was denied, Evans attempted to file another appeal with this court, but we dismissed the appeal. *Evans v. State*, No. 02-13-00522-CR, 2013 WL 6806603, at *1 (Tex. App.—Fort Worth Dec. 19, 2013, no pet.) (per curiam) (mem. op., not designated for publication). Evans also filed a petition for writ of habeas corpus in federal court, and his petition was denied. *Evans v. Stephens*, 4:13-CV-301-A, 2015 WL 66524, at *17 (N.D. Tex. Jan. 5, 2015) (mem. op. and order).

Evans has unsuccessfully appealed the denial of previous post-conviction motions as well. *Evans v. State*, No. 02-15-00019-CV, 2015 WL 1869221, at *2 (Tex. App.—Fort Worth Apr. 23, 2015, pet. dism'd) (per curiam) (mem. op.) (affirming denial of Evans's post-conviction motion to have Intrepid released to a third party).

unclear[7]—due to the mix-up between the 9mm and .380 cartridges. A sizeable portion of Evans's motion consisted of the copied-and-pasted FWPD Crime Lab memorandum acknowledging the mispackaging. There is no indication from the record that either mispackaged cartridge was subjected to DNA testing. Nonetheless, Evans's motion for post-conviction testing alleged that the memorandum showed "th[e] case [wa]s rife with mishandling of the evidence collected by police that call[ed] into question the results of DNA testing that was completed as well as the conviction itself." He thus claimed "that all the evidentiary items gathered in this case during the Fort [Worth] Police Department's case were either not tested period and that the ones that were tested [we]re unreliable" and needed to be retested.

The trial court appointed counsel to assist Evans with the Chapter 64 proceeding. The State filed a response to Evans's motion, as well as an affidavit listing the items in the FWPD's possession that might contain biological material. The trial court denied Evans's motion without a hearing and adopted a modified form of

---

[7]Portions of Evans's first trial-court motion for post-conviction DNA testing appeared to request testing or retesting of "all the evidentiary items gathered in . . . the Fort [Worth] Police Department's case," but other portions of the motion appeared to limit its scope to "all the previous DNA testing by the Fort Worth Forensic Laboratory." Meanwhile, Evans's supporting declaration requested testing of all "the ballistic evidence collected." And the memorandum acknowledging the mislabeling had an even more narrow scope: two cartridges. The State interpreted Evans's motion as a request to test "all evidence gathered by the police in [his] case." When Evans later filed his second motion, it contained the same ambiguous allegations and was similarly interpreted by the State.

the State's proposed findings of fact and conclusions of law.[8] Evans's counsel then withdrew.

Approximately six months later, Evans filed a second post-conviction motion for DNA testing—the motion he now appeals. Evans's second motion expressed his dissatisfaction with the attorney appointed to represent him on his first motion; Evans blamed his appointed counsel for the denial of his first motion and for his failure to file a timely appeal.[9] Evans's second motion was thus substantially similar to his first and re-urged his previously denied request for DNA testing of the same ambiguous amount of evidence.[10] As with his first motion, Evans supported his second motion with an unsworn declaration—not made under penalty of perjury—contending that the State "mishandled, tainted[,] or otherwise degraded all the ballistic evidence collected related to my case."

The State responded by arguing that (1) Evans failed to show that newer testing techniques were available and capable of providing more accurate results than those produced by the original DNA tests; (2) if Evans's allegations of contamination and

---

[8]The trial court modified one sentence of the State's proposed findings of fact and conclusions of law to correct a typographical error.

[9]Evans's second motion did not raise an ineffective-assistance-of-counsel claim; the motion merely vented Evans's frustration.

[10]Evans's second motion added two things to his first motion: (1) complaints regarding the attorney appointed to represent Evans on his first motion, and (2) approximately one new page of argument highlighting facts that Evans considered "materially related to" his request for DNA testing.

evidence-mishandling were true, then the evidence did not meet the statutory chain-of-custody requirement for post-conviction DNA testing;[11] and (3) Evans could not show by a preponderance of the evidence that the jury would not have convicted him if it had been presented with exculpatory results from the requested DNA tests.

The trial court again denied Evans's motion without a hearing, and it adopted the State's proposed findings of fact and conclusions of law.[12] The conclusions of law provided, among other things, that "[t]he defendant's claims that the evidence was cross-contaminated or mishandled ma[d]e[] that evidence ineligible for post-conviction forensic DNA testing" because Chapter 64 limits post-conviction testing to evidence with a sufficiently reliable chain of custody.

Evans timely appealed the trial court's denial of his second motion.[13]

---

[11]The State did not assert the chain-of-custody argument in its response to Evans's first motion for post-conviction DNA testing.

[12]The State's proposed findings of fact and conclusions of law disposing of Evans's second motion differed from those disposing of Evans's first motion by (1) incorporating the trial court's changes to the State's first set of proposed findings and conclusions; and (2) adding new conclusions of law to address the chain-of-custody requirement.

[13]Evans's brief challenges the trial-court order denying his *first* motion for retesting and the corresponding findings of fact and conclusions of law. However, we do not have jurisdiction to review the order denying Evans's first motion because Evans did not timely appeal that order. *Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996); *McCain v. State*, No. 02-13-00459-CR, 2013 WL 6157123, at *1 (Tex. App.—Fort Worth Nov. 21, 2013, no pet.) (per curiam) (not designated for publication); *see* Tex. Code Crim. Proc. Ann. art. 64.05; Tex. R. App. P. 26.2(a). Indeed, Evans expressly recognized as much when he filed his second motion for post-conviction testing. Evans thus appears to have inadvertently targeted the trial

## II. Standard of Review

We review a trial court's denial of a motion for post-conviction DNA testing under a bifurcated standard. *See Leal v. State*, 303 S.W.3d 292, 296 (Tex. Crim. App. 2009); *Esparza v. State*, 282 S.W.3d 913, 921 (Tex. Crim. App. 2009). We defer to a trial court's determination of historical facts and application-of-law-to-fact questions that turn on credibility and demeanor, but we review other application-of-law-to-fact questions and pure legal questions de novo. *Leal*, 303 S.W.3d at 296; *Esparza*, 282 S.W.3d at 921.[14] If the trial court's decision is correct under any theory of law applicable to the case, we will sustain it. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000); *see Fain v. State*, No. 02-10-00412-CR, 2012 WL 752652, at

---

court's first order in his brief. The State appears to have understood the mistake as inadvertent as well.

Because Evans's first and second motions for post-conviction testing were substantially similar, because the State understood Evans's argument as a challenge to the trial court's order denying Evans's second motion, and because the challenged portions of the trial court's findings and conclusions appeared in both the first and second sets, we liberally construe Evans's brief as a challenge to the trial court's order denying Evans's second motion for post-conviction testing. *See* Tex. R. App. P. 38.9.

[14]*But compare Leal*, 303 S.W.3d at 296 (applying bifurcated standard where DNA motion was denied without a hearing), *and Esparza*, 282 S.W.3d at 921 (same), *with Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005) ("While we defer to the trial court's determination of issues of historical fact and application of law to fact issues that turn on the credibility and demeanor of the witnesses, there were no such issues in this case since there were no witnesses at the hearing and the trial record and affidavit of the Appellant are the only sources of information supporting the motion.").

*20 (Tex. App.—Fort Worth Mar. 8, 2012, pet. ref'd) (mem. op., not designated for publication); *Garcia v. State*, No. 01-05-00718-CR, 2008 WL 2466211, at *2 (Tex. App.—Houston [1st Dist.] June 19, 2008) (mem. op., not designated for publication), *aff'd*, PD-1039-08, 2009 WL 3042392 (Tex. Crim. App. Sept. 23, 2009).

## III. Discussion[15]

Chapter 64 of the Code of Criminal Procedure authorizes post-conviction forensic DNA testing only if certain requirements are met. *See* Tex. Code Crim. Proc. Ann. arts. 64.01, 64.03. Three of those requirements are relevant here: (1) the trial court must find that the item's chain of custody was sufficiently reliable to establish that the item has not been tampered with; (2) the convicted individual must accompany his motion with an affidavit alleging facts to support the requirements for

---

[15]Although not listed as a point for review, a portion of Evans's brief asserts that he was entitled to appointed counsel. This assertion is directed at the "convicting court"—i.e., the trial court—and the relevant section of argument appears to have been inadvertently copied from Evans's second trial-court motion for post-conviction testing, which in turn appears to have inadvertently copied the section from his first trial-court motion for post-conviction testing. Given Evans's complaints regarding the counsel appointed to assist him with his first motion for post-conviction testing, it is unclear whether Evans actually sought to have new counsel appointed to assist him with his second motion.

Regardless, to the extent that Evans intends to complain of the trial court's failure to appoint him counsel on his second motion for post-conviction testing, we hold that the trial court did not err because there was not "reasonable grounds for a motion to be filed" due to the chain-of-custody issue discussed herein. Tex. Code Crim. Proc. Ann. art. 64.01(c) (requiring convicting court to appoint counsel if, among other things, "the court finds reasonable grounds for a motion to be filed"); *Ex parte Gutierrez*, 337 S.W.3d 883, 891–95 (Tex. Crim. App. 2011); *infra* Section III.A.

testing under Chapter 64; and (3) the convicted individual must prove by a preponderance of the evidence that if the requested DNA test had been conducted and produced exculpatory results,[16] the jury would not have convicted him. Tex. Code Crim. Proc. Ann. arts. 64.01(a-1), 64.03(a).

Evans focuses on the last requirement; he argues that the trial court erred by denying his motion for post-conviction testing because, Evans claims, the trial court erroneously found that there was "significant non-DNA evidence" of Evans's guilt and that Evans failed to show "that new 'exculpatory' DNA testing results would establish a reasonable probability of his non-conviction."[17] Yet, this was only one of the reasons the trial court gave for denying Evans's motion. The trial court also correctly concluded that the allegations forming the basis for Evans's motion, if taken as true, undermined the chain-of-custody requirement necessary for post-conviction testing. *See id.* art. 64.03(a)(1)(A)(ii). Moreover, Evans's motion had a second and even more glaring flaw: Evans failed to support the motion with an affidavit or a statutorily authorized substitute for an affidavit. *See id.* art. 64.01(a-1).

---

[16]Exculpatory results are "those results excluding the convicted person as the donor of this material." *LaRue v. State*, 518 S.W.3d 439, 446 (Tex. Crim. App. 2017).

[17]Just as the scope of Evans's trial-court motions was unclear, the scope of his appeal is unclear; we are uncertain what evidence Evans believes the trial court should have ordered be tested. *See supra* note 7. However, the chain-of-custody and affidavit requirements discussed herein support the trial court's denial of Evans's second motion for post-conviction testing regardless of the motion's scope.

## A. Chain-of-Custody Requirement

Under Chapter 64, "[a] convicting court may order forensic DNA testing . . . only if . . . the court finds that . . . the evidence . . . has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect." *Id.* art. 64.03(a)(1)(A)(ii). Evans's second trial-court motion asserted that post-conviction DNA testing was necessary because "the evidence was mixed and tainted" due to the alleged "mishandling of the evidence collected by police." Evans himself thus alleged that the chain-of-custody requirement necessary for post-conviction DNA testing had not been satisfied. The State recognized as much and did not offer evidence to rebut Evans's allegation. *See Garcia*, 2008 WL 2466211, at *4 (holding Garcia failed to meet the Chapter 64 requirements because, among other reasons, law-enforcement affidavits documenting the present custodian of evidence did not satisfy the chain-of-custody requirement). Because the chain-of-custody requirement was not satisfied, the trial court correctly concluded that it could not grant post-conviction DNA testing under Chapter 64. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A)(ii).

## B. Affidavit Requirement

Yet, even if the chain-of-custody requirement had been satisfied, the trial court's denial of post-conviction DNA testing could be sustained on another basis:

Evans failed to support his motion for post-conviction testing with an affidavit or a statutorily authorized substitute for an affidavit.

Chapter 64 requires a post-conviction motion for DNA testing to "be accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion." *Id.* art. 64.01(a-1). Generally, an inmate may use a declaration in lieu of an affidavit if the declaration meets the requirements of Texas Civil Practice and Remedies Code Section 132.001. *Bahm v. State*, 219 S.W.3d 391, 393–94 (Tex. Crim. App. 2007). Section 132.001 requires that the declaration be "(1) in writing; and (2) subscribed by the person making the declaration as true under penalty of perjury." Tex. Civ. Prac. & Rem. Code Ann. § 132.001(c); *see* Tex. Penal Code Ann. § 37.02(a)(2) (criminalizing the act of giving a false Section 132.001 declaration as perjury).

Evans accompanied his motion with a document entitled "unsworn declaration," but Evans's declaration did not include "[t]he only phrase that the Legislature actually mandates should be included in such declarations": that the declaration was "under penalty of perjury." *Bahm*, 219 S.W.3d at 394 (describing the phrase as "vital"); *see* Tex. Civ. Prac. & Rem. Code Ann. § 132.001(c)(2). "The inclusion of the phrase 'under penalty of perjury' is the key to allowing an unsworn declaration to replace an affidavit"; it is "significant in itself, carrying serious legal consequences that can and should *not* be ignored." *Bahm*, 219 S.W.3d at 394; *Dominguez v. State*, 441 S.W.3d 652, 658 (Tex. App.—Houston [1st Dist.] 2014, no

13

pet.). Far from swearing to his statement under penalty of perjury, Evans's declaration did not even claim that its "statements of fact in support of the motion"—the statements Chapter 64 required him to verify in an affidavit—were true. Tex. Code Crim. Proc. Ann. art. 64.01(a-1); *see Marks v. State*, No. 2-09-144-CR, 2010 WL 598459, at *1 (Tex. App.—Fort Worth Feb. 18, 2010, no pet.) (mem. op., not designated for publication). Rather, Evans's declaration stated that "it [wa]s [his] contention"[18] that the requirements for testing—other than the chain-of-custody requirement—had been satisfied.[19] *Cf. In re Padilla*, No. 03-19-00388-CR, 2021 WL 126779, at *4 n.8 (Tex. App.—Austin Jan. 14, 2021, pet. filed) (mem. op., not designated for publication) (holding Padilla's declaration substantially complied with Section 132.001 where the declaration did not contain Padilla's birthdate but was made under penalty of perjury and stated that the facts in Padilla's motion were true and correct). Such unsworn "contention[s]" did nothing more than restate the arguments set forth in Evans's motion and could not serve in lieu of an affidavit. *See*

---

[18]A hedging term such as "contention" or "according to my belief" would not nullify an otherwise valid declaration that is sworn "under penalty of perjury." *Bahm*, 219 S.W.3d at 393–95.

[19]Although the majority of Evans's declaration used the term "contention," a single sentence used a stronger term: Evans "aver[red]" that there was "more than a mere probability" that the jury would not have found him guilty if the evidence had been "competently processed." However, the "ultimate question of whether a reasonable probability exists that exculpatory DNA tests would change the result on guilt–innocence" is not a fact issue; it is "an application-of-law-to-fact question." *LaRue*, 518 S.W.3d at 446.

Tex. Civ. Prac. & Rem. Code Ann. § 132.001(c); *Marks*, 2010 WL 598459, at *1 (affirming trial court's denial of motion for post-conviction testing because, among other things, "Marks did not support his motion with an affidavit as required by Article 64.01(a), nor did he affirm that all factual allegations in the motion were true"). Consequently, Evans failed to satisfy Chapter 64's affidavit requirement. Tex. Code Crim. Proc. Ann. art. 64.01(a-1). This lapse was independently sufficient to support the trial court's denial of Evans's motion for post-conviction testing even if Evans had satisfied the chain-of-custody requirement. *Id.*; *see Ross*, 32 S.W.3d at 855–56; *Fain*, 2012 WL 752652, at *20.

## IV. Conclusion

The trial court's denial of Evans's second motion for post-conviction DNA testing is supported by two independently sufficient grounds.[20] We therefore overrule his sole point and affirm the trial court's order.

---

[20]Our reliance on the chain-of-custody and affidavit requirements is not intended to imply that Evans satisfied the remaining Chapter 64 requirements for post-conviction testing. *See* Tex. Code Crim. Proc. Ann. arts. 64.01, 64.03. For example, the State argues that Evans did not meet the statutory requirements for retesting because he failed to show that newer DNA testing techniques offered more accurate and probative results than the results of the previous DNA tests. *See id.* art. 64.01(b)(2)(A). However, due to the ambiguously broad scope of Evans's request for post-conviction testing, such a lapse would not necessarily be dispositive. Therefore, we sustain the trial court's order on the dispositive chain-of-custody and affidavit requirements, and we decline to address the remaining Chapter 64 requirements. *See* Tex. R. App. P. 47.1.

/s/ Mike Wallach
Mike Wallach
Justice

Publish

Delivered: July 15, 2021